J. W. BANFIELD and NORMA E. BANFIELD, his wife, *Plaintiffs in Error*, vs. ADDISON S. ADDINGTON and DAISY T. ADDINGTON, his wife, *Defendants in Error*.

140 So. 893.

En Banc.

Opinion filed April 5, 1932.

*J. Carl Lambdin,* for Plaintiffs in Error;

*Bivens & Huggins,* for Defendants in Error.

DAVIS, J.—Norma E. Banfield, joined by her husband, J. W. Banfield, sued Addison S. Addington and Daisy T. Addington, his wife, for a tort alleged to have been committed by Mrs. Addington in the conduct and operation of a permanent wave apparatus in her beauty shop. The court sustained a demurrer to the declaration on the ground that a married woman owning and operating a beauty shop could not become liable for a tort committed by a servant in that shop, and entered final judgment for the defendant married woman. Writ of error was taken to this judgment.

It seems to me that the declaration states a good cause of action. It alleges that Daisy T. Addington, a married woman, owned and operated an establishment known as a permanent wave and beauty shop at No. 218-220 Fourth Street North, in the City of St. Petersburg, where the public was invited to enter; that at said time said defendant, Daisy T. Addington, employed certain employees and servants to assist her in the conduct and operation of said beauty shop; that on or about June 7, 1928, the plaintiff, Norma E. Banfield, lawfully entered the establishment of the defendant, Daisy T. Addington, for the purpose of securing a permanent wave for her hair; that one of the aforesaid employees of the defendant, Daisy T. Addington, undertook to give to said plaintiff's hair the permanent wave that she desired, and for that purpose attached to plaintiff's head and hair a machine or apparatus designed to give the hair a permanent wave; that said machine or apparatus contained live steam or other similar heating element which came into close proximity to plaintiff's scalp and head, thereby making said machine or apparatus dangerous to operate; that although plaintiff was at all times in the exercise of due care, the defendant, Daisy T.

Addington, by her said employee, operated her machine or apparatus so carelessly and negligently and with such disregard of the due care owed to plaintiff, that live steam was allowed to escape from the apparatus and to come into direct contact with plaintiff's scalp and head, whereby plaintiff's scalp and head were painfully burned and blistered and caused to be badly torn and lacerated in several places and the hair on plaintiff's scalp was totally destroyed, thus permanently scarring and disfiguring plaintiff, by reason of which she sustained damages in the sum of $4,000.00.

At common law a married woman was, as a general rule, liable civilly for her pure torts, not committed under the coercion of her husband, and not growing out of or founded on, or directly connected with or a part of, or the means of effecting, a contract which she had undertaken to make. Meeks v. Johnston, 85 Fla. 248, 95 Sou. Rep. 670; Graham v. Tucker, 56 Fla. 307, 47 Sou. Rep. 563; 19 L. R. A. (N. S.) 531; 131 Am. St. Rep. 124; Prentiss v. Paisley, 25 Fla. 927, 7 Sou. Rep. 56.

It is argued that Daisy T. Addington being a married woman, was incapable in law of entering into a contract to give the plaintiff, another married woman, a permanent wave of her hair, and that therefore no legal liability could have accrued against her, because the acts complained of amounted to a mere breach of her contract for giving a permanent wave, or if tortious, are for a tort growing out of, or founded on, her contract, for which she would not be liable. It is also argued that since Daisy T. Addington was a married woman, she was incapable of making a contract for the employment of servants in the conduct of her permanent wave and beauty shop which she undertook to operate, and that therefore no liability against her in an action of tort could have accrued against her under the doctrine of *respondeat superior*. Graham v.

Tucker, *supra,* is relied on to support both these propositions.

I am unable to see that the case of Graham v. Tucker is in point or controlling with regard to the situation here presented. All that was held in Graham v. Tucker, *supra,* is that a married woman is not liable in an action on the case for negligence arising out of her acts of nonfeasance merely.*

Assuming therefore that the transaction complained of in the declaration had its origin in an agreement between the plaintiff and the married woman operator of the beauty parlor to give plaintiff a permanent wave for a certain consideration to be paid by her therefor, it by no means follows that the resultant damages, by way of negligence, to the plaintiff's head through defendant's failure to operate the hair waving machine in a proper manner, constitutes solely a right of action for breach of the alleged contract. The law is well settled to the contrary and many illustrations of its application to that effect may be made.

Thus, in Gill and wife v. Middleton, 105 Mass. 477, 7 Am. Rep. 548, the Court says:

"It is well settled, that, for an injury occasioned by want of due care and skill, in doing what one has promised to do, an action may be maintained against him in favor of the party relying on such promise and injured by the breach of it, although there was no consideration for the promise. Benden v. Manning, 2 N. H. 289; Thorne v. Deas, 4 Johns. 84; Elsee v. Gatwood, 5 T. R. 143; Shiells v. Blackburne, 1 H. Bl. 158; Balfe v. West, 22 Eng. Law & Eq. 506."

And in Mobile Life Ins. Co. v. Randall, 74 Ala. 170, it was held by the Supreme Court of Alabama that for the breach of an ordinary contract, which involves no element

---

*This is the substance of the holding of that case as stated in 13 R. C. L. p. 1222.

of tort, an action of assumpsit is the proper remedy and an action on the case will not lie; but, when a duty is imposed by the contract, or grows out of it by legal implication, and injury results from the violation or disregard of that duty, an action on the case will lie to recover damages, although an action of assumpsit might also be maintained for the breach of duty. In discussing this proposition, the Supreme Court of Alabama, in the case just cited, said:

"Wherever there is carelessness, recklessness, want of reasonable skill, or the violation or disregard of a duty which the law implies from the conditions or attendant circumstances, and individual injury results therefrom, an action on the case lies in favor of the party injured; and if the transaction had its origin in a contract, which places the parties in such relation as that, in performing or attempting to perform the service promised, the tort or wrong is committed, then the breach of the contract is not the *gravamen* of the suit. There may be no technical breach of the letter of the contract. The contract, in such case, is mere inducement, and should be so stated in pleading. It induces, causes, creates the conditions or state of things, which furnishes the occasion of the tort. The wrongful act, outside of the letter of the contract, is the *gravamen* of the complaint; and in all such cases, the remedy is an action on the case."

"The difference between *assumpsit,* which is an action directly on the contract, and *case,* which is collateral to it," says the Supreme Court of Pennsylvania in Zell v. Arnold, 2 Penr. & Watts text 294, "is shown by the pleadings, the general issue in the first being *non assumpsit,* and in the second, not guilty. These are sometimes concurrent remedies; as in an action against a carrier who may be made to respond either immediately on the contract which affords a specific right of action, or on the custom which raises a duty to carry the goods safely; and as the one or the other form is adopted, so may the count be joined with other counts sounding in contract or *tort:* Law of Carriers,

117. In all cases where the action is not on the contract, but for the breach of a collateral duty, the *gist* is a personal *tort;* as where a smith pricks a horse in shoeing, or a farrier kills him by bad medicine or neglect, and it is emphatically the *gravamen* in an action against a barber for barbering his customer *negligenter et inartificialiter;* 2 Bulstr. 333. That the defendant's liability arose remotely out of a contract, therefore, is by no means decisive of the question.''

In every situation where a man undertakes to act, or to pursue a particular course, he is under an implied *legal* obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another, just as if he had bound himself by an obligatory promise to exercise the required degree of care. Street's Foundations of Legal Liability, Vol. 1, page 92. And even ''when a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case. And this duty is not affected by the fact, if so it be, that he is acting for reward, in other words, under a contract, and may be liable on the contract. The two duties are distinct, except so far that the same party cannot be compensated twice over for the same facts—once for the breach of contract and again for the wrong.'' Flint & Walling Mfg. Co. vs. Beckett, supra (12 L. R. A. New Series, text 933).

''One who enters on the doing of anything attended with risk to the persons or property of others is held answerable for the use of a certain measure of caution to guard against that risk. . . it is the duty of every artificer to

exercise his art rightly and truly as he ought." Webb's Pollock on Torts, pp. 533-536.

"Case will not lie for *nonfeasance*, where the undertaking was gratuitous merely; but if the party promising have commenced upon his undertaking, case will lie for any *malfeasance*, or neglect, in the performance of it." Hyde vs. Moffat, 16 Vt. 271. To maintain an action on the case for damages sustained at the hands of a wrongdoer, it is only necessary to fix liability that "a privity must exist between the act of a wrongdoer and the injury complained of, in order to lay the foundation for a recovery." McNary vs. Chamberlain, 34 Conn. 394, 91 Am. Dec. 732. The omission to perform a mere contract duty may not be a tort; but if a legal duty arises independently of or concurrently with the contract, a breach of the legal duty may be a tort, no privity of contract being necessary to support an action in tort for the infraction of a duty implied by law, such as the duty of every one to so exercise his own rights as not to injure others in the enjoyment of theirs. Woodbury vs. Tampa Water Works Co. 57 Fla. 243, 49 So. 556, 21 L. R. A. (N. S.) 1034.

Thus, in Palm Beach Corporation vs. Smith, 137 Sou. Rep. 234, it was recently held by this court that the negligent failure of a tax collector to promptly deposit a check given to her for taxes, which she gratuitously accepted and undertook to promptly present, gave rise to an action in tort against her when the money was lost by failure of the bank before the check was deposited.

Where a transaction complained of has its origin in a contract for service which places the parties in such a relation to each other that in attempting to perform the promised service a tort is committed, then the breach of the contract is not the *gravamen* of the suit brought to recover damages for the tort. And in such case the contract is considered mere inducement, creating the state of things

which furnishes the occasion of the tort, but not the basis of recovery for it, and in all such cases the remedy is an action *ex delicto* on the case. Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N. E. 503, 12 L. R. A. (N. S.) 924; Brown v. Boorman, 11 Clark & F. 1; Myers v. Gilbert, 18 Ala. 467; Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Nevin v. Pullman Palace Car Co., 106 Ill. 222; 46 Am. Rep. 688; Zell v. Arnold, 2 Penr. & Watts 292; Elsee v. Gatwood, 5 T. R. 143; Ashmore v. Pennsylvania Steam Towing & Transp. Co., 28 N. Y. L. 180; Emigh v. Pittsburgh etc. R. Co., 4 Miss. 114, Federal Cases No. 4449. And so it is that where an undertaking is wholly gratuitous, an action on the case will lie for misfeasance in regard thereto. Hyde v. Moffat, 16 Vt. 271; Gill v. Middleton, 105 Mass. 477, 7 Am. Rep. 548. See also 26 R. C. L. 758.

It would seem, therefore, from the foregoing statement of the law, which is amply supported by respectable authority from all over the country, that the plaintiff in the case now before the court, would have had the right to sue for any positive tort committed against her person in the negligent application of the permanent hair wave machine to her scalp and head, irrespective of any contract by the owner or operator of it for the rendition of the professional service involved in its use.

The tort charged is not a mere nonfeasance, but a positive act of malfeasance. Liability for it may have arisen whether the undertaking of the defendant was for hire or merely gratuitous. And if a special contract for personal services as a beauty parlor expert was undertaken by the defendant married woman which was beyond her power to make, that fact is immaterial to the tort liability she may have incurred for positive acts of negligence which arose out of, but were not dependent upon, contractual, or attempted contractual, relationships giving rise to a legal

duty on such married woman's part not to injure the plaintiff's person.

The reason for this is the firmly established rule that for injuries resulting from the unskillful or otherwise negligent performance of a thing agreed to be done, an action *ex delicto* will lie, notwithstanding the injury complained of would also be ground for an action *ex contractu*. In such cases the distinction made is that the action *ex delicto* can be maintained where the action is founded on something more than mere nonfeasance in the performance of an alleged contract.

In the case now under consideration. whatever contract there was between Mrs. Banfield and Mrs. Addington is stated in the declaration as a mere matter of inducement. The statement of it neither adds to nor takes away from the liability asserted against Mrs. Addington for her positive tortious act in injuring the plaintiff in the course of carrying out a relationship which she herself voluntarily assumed toward the plaintiff. To constitute a liability in tort for a positive, negligent and even gratuitous act, committed by the defendant in the operation of a hair waving machine from which live steam was allowed to escape, it was only necessary for the plaintiff to show that some kind of privity existed between the act of the wrongdoer and the injury complained of to authorize a recovery. McNary v. Chamberlain, 34 Conn. 394, 91 Am. Dec. 732; Silver v. Frazier, 3 Allen (Mass.) 382; 81 Am. Dec. 662.

A pertinent illustration of how a liability in tort may arise by reason of a contract relationship, but be in no wise dependent upon a breach of the contract involved will be found in the Florida case of Chipley v. Atkinson, 23 Fla. 206, 1 Sou. Rep. 934, 11 Am. St. Rep. 367, where it was held that a third party not a party to an employment contract, might become liable *in tort* for injuries caused by his maliciously procuring one of the contracting parties to

lawfully terminate his contract with the other, by exercising a right which such party had so to do, but which he would not have exercised but for defendant's interference.

It seems plain, therefore, that the allegation of an undertaking, contractual or otherwise, by Mrs. Addington to give Mrs. Banfield a permanent wave of her hair does not make the cause of action sued on in the declaration a matter rising out of or connected with a contract in a legal sense, such as would relieve a married woman from liability by reason thereof under the rule in the Florida cases first cited.* This is necessarily true in a case like the present where the contract disclosed is a mere matter of inducement, pleaded to show how the relationship came about which resulted in the breach of duty on the part of Mrs. Addington not to inflict a positive, tortious, personal injury upon Mrs. Banfield.

But it is argued also that Mrs. Addington being a married woman, was incapable in law of employing a servant to operate the machine in her beauty parlor. And upon that premise it is contended that she cannot become liable for the tort of her servant committed in the course of operating the machines in defendant's shop, under the doctrine of *respondeat superior*. It seems to me, however, that there are two complete answers to this contention, both of which will sustain the right of the injured party to maintain this suit.

The first of them is, that if Mrs. Addington was incapable of legally employing a servant, but nevertheless attempted to do so and acted in conjunction with the actual tort feasor in her shop in the handling of dangerous machines used for hair waving purposes, then Mrs. Addington and her alleged servant and employee were *joint* tort feasors con-

---

*Meeks v. Johnston, 85 Fla. 248; Graham v. Tucker, 56 Fla. 307; Prentiss v. Paisley, 25 Fla. 927.

cerning the negligence of which the actual operator of the machine became guilty. The second is that the statutes of this state impliedly authorize a married woman to employ agents and servants in a business such as a beauty parlor, because they expressly authorize her to acquire *earnings* in any employment separate from her husband, which earnings shall be her separate property, and subject to her own disposal, and for which she is entitled to sue and recover the same, as though she were a single woman. See Section 5871 C. G. L., 3952 R. G. S. This new right of married women has been recognized by this Court in the case of Heath v. Heath, 103 Fla. 1071, 138 Sou. Rep. 796, recently decided, where the Court upheld a married woman's right to recover certain rights in her husband's property, which had accrued to her by the investment of her separate earnings in the business owned and operated by him.

At common law the husband had almost absolute control over the wife's person; was entitled as the result of their marriage, to her society, services and earnings, to have her goods and chattels; had a right to reduce her choses in action to possession during her life, could collect the rents and profits of her real estate and had entire control over her property. She was bound to obey her husband, was incapable of making contracts except for necessaries, so that in law they were regarded as but one person. As a necessary consequence he alone was liable for, and could be sued, for her torts and frauds committed during coverture in his presence or by procurement; otherwise they were jointly liable and must be so sued. The only torts for which the wife could be sued at common law, and judgment rendered against her, and jointly with her husband, were torts unmixed with any element of contract, or in other words, her pure torts. Flesh v. Lindsay, 115 Mo. 1, 21 S. W. 907, 37 Am. St. Rep. 374.

But the foregoing view of the legal relationship of husband and wife is no longer warranted, when by modern conditions and through modern statutory provisions, the wife has been emancipated with respect to her personal wages and earnings. Where the reason for a rule of the common law, which is the spirit and soul of that law, fails, the rule itself fails. See Abraham v. Baldwin, 52 Fla. 151, 42 Sou. Rep. 591, 10 L. R. A. (N. S.) 1051, 10 Ann. Cas. 1148. It is only logical and just therefore that the courts take cognizance of those new conditions, which by their necessary implication, have modified the factors necessary to support pre-existing restrictions on the legal liabilities of married women which existed under the common law as construed in the early cases on the subject. Martin v. Robson, 65 Ill. 139, 16 Am. Rep. 578. This court itself has just recently declared itself in line with a judicial recognition of such changed conditions, statutory implications and necessary modifications as affecting the rights and liabilities of married women. See the case of Hoover v. Hoover, 103 Fla. 846, 138 Sou. Rep. 373, lately decided by this Court, where MR. JUSTICE TERRELL, in delivering the opinion of the Court, referred to the fact that ''the modern rule in almost every State in this Country has relaxed the old common law doctrine of coverture.''

It may have been true that because under the early common law, a married woman was incapable of making a contract, that she was consequently incapable of holding the relation of master to servant; that if she hired domestic servants or others whose servants *the husband accepted,* that she was considered as having done so as her husband's agent and on his behalf,—that they were to be considered as his servants and not hers, and that he alone was responsible to and for them. Ferguson v. Neilson, 17 R. I. 81, 20 Atl. 229, 33 Am. St. Rep. 855, 9 L. R. A. 155. But in this State a statute has been enacted (Section 5871

C. G. L., 3952 R. G. S.) which gives to a married woman the right to make a contract of employment, and which secures to such married woman her wages and earnings acquired by her in "any" employment separate from her husband, and entitles her to sue for and recover the same as though she were a single woman. If a married woman can become an employee under the statute, it is anomalous to hold that she is forbidden to become an employer as well.

In the case at bar it is clear that under our statute permitting married women to sue for their earnings, the defendant, Mrs. Addington, had the right to sue Mrs. Banfield for the wages and earnings which she would have become entitled to as the result of the services she performed in giving Mrs. Banfield a permanent wave of her hair, had the accident not occurred. A necessary corollary to this right to sue would seem to be, that if she, as a married woman, had the right to engage in "any employment" separate from her husband, that she also had the right to have servants and helpers to assist her in such "employment." And having the right to hire servants and helpers to assist her in her "employment" to enable her to acquire "earnings" (it will be noted that this is a broader term than the word "wages" which precedes it), it must necessarily follow that all the liability which may be imputed to a master through the positive act of negligence of a servant, can likewise be imputed to married woman employer of such servant, as much so as if she were a *feme sole*.

Any other rule would be contrary to the reason and spirit of the law which is the life thereof, and would be provocative of the greater injustice. It would mean that married women might become lawyers, doctors, nurses, teachers, beauty parlor experts, and what not, with no legal right to engage the services of servants or other assistants to enable them to carry on their work. Any such

rule is wholly inconsistent with modern conditions and if there was ever any basis in the past for observing it, such basis no longer exists now. Present-day statutes and twentieth-century conditions have necessarily modified the ancient rules in this respect.

It has been held that under the common law a married woman may be civilly answerable for personal injuries inflicted, not in her presence, upon a third person, by her husband while acting in the scope of his authority *as her agent*. Shane v. Lyons, 172 Mass. 199, 51 N. E. 976, 70 Am. St. Rep. 261. It would seem equally as logical to say that if a married woman can become liable for a positive tort committed through the *agency* of her husband, that she might just as well become liable for that same tort when committed through the *agency* of some one else not her husband. There is nothing peculiar to the marital status which permits a husband to become his wife's *agent* to the exclusion of all others.

Under Section 87 C. G. L., 71 R. G. S., the common law of England is in force in this State, but only so far as the rules of the English common law be not "inconsistent" with the acts of the legislature of this State. That the common law may be modified *indirectly* as well as directly, by a statute which is "inconsistent" with the common law in a particular instance, is a rule which is well settled in our jurisprudence. An illustration of this is found in the case of Hadley v. City of Tallahassee, 67 Fla. 436, 65 Sou. Rep. 545; Ann. Cas. 1916-C 719, where it was held that the mother of an illegitimate minor child had the right to sue for and recover damages for the death of such child by the wrongful act, negligence, carelessness or default of another, although at common law a bastard in the eye of the law had neither father nor mother, nor any other kindred, but was regarded as *nullius filius*. In that case a statute giving the mother the right to receive and trans-

mit inheritances of property through her illegitimate child was held to have modified the common law rule that a bastard was *nullius filius* to such extent as to give the mother the right to recover for death or injury to her illegitimate child,—a right which the common law *unmodified* plainly denied.

Upon a like principle, and fortified by the same reasoning, it should be held that our statute giving a married woman the right to engage in any employment separate from her husband, has conferred upon her the right to engage servants in connection with any such employment, and has imposed upon her liability for any negligent acts of such servants committed on behalf of such married woman, for which such married woman herself would be liable had she personally committed them.

In the case at bar if the operator of the hair waving machine which injured the plaintiff was herself a married woman, she would without question be liable for the tort alleged to have been committed. To say that Mrs. Addington, the owner of the shop who furnished her with that machine and who employed her to operate it, is not liable because she, also, is a married woman, is to recognize a rule which results in an absolute legal absurdity. For example, under the decisions the operator of the machine being a married woman would not be exempt from her tort, although her employer would be exempt because of her coverture. The married woman employee under the statute being entitled to engage in an employment separate from her husband, and entitled to her wages derived therefrom as if a *feme sole*, would have the right to enter into a contract of employment with her employer, which according to this theory would be binding upon the employee, but void as to the married woman employer because of her coverture. In other words, the operator of the machine, because of being an employee and not an em-

ployer, could occupy the status in law of an employee of one who had no right in law to give her that employment. To merely state such a proposition is to demonstrate its fallacy.

My conclusion is that the effect of our statute authorizing married women to engage in employments separate from their husbands, is to confer upon them the right to assume the position of master and servant, with all the rights and liabilities which necessarily go with that relation; that it thereby makes a married woman liable for any act of a servant employed by her, for which act she would be liable if she had committed the act personally, and not through her servant.

The situation presented here is not controlled by any Florida cases heretofore decided, because the tort here sued for is a positive act of negligence for. which a suit for damages should be upheld upon the principles hereinbefore discussed. The judgment denying such liability and refusing the right to recover for it should be reversed.

Reversed and remanded.

BUFORD, C.J., AND WHITFIELD AND TERRELL, J.J., concur.
ELLIS AND BROWN, J.J., dissent.

WHITFIELD, J. (Concurring).—The declaration in substance alleges that a married woman owned and operated a beauty shop where the public was invited to enter for hair dressing purposes; that such married woman employed servants to assist her in the conduct and operation of said establishment; that one of said employees undertook to give to plaintiff's hair the permanent wave plaintiff desired, and for that purpose attached to plaintiff's head and hair a machine containing live steam or other similar heating element, which was so carelessly and negligently operated by defendant's employee that plaintiff's scalp and head were grievously and painfully burned. A demurrer to the declaration was sustained, and plaintiffs declining. to plead

further, judgment for defendants was rendered, to which a writ of error was taken.

The statutes of the State contain the following:

"A married woman's wages and earnings acquired by her in any employment separate from her husband shall be her separate property and subject to her own disposal, and she shall be entitled to sue for and recover the same as though she were a single woman." Sec. 5871 (3952) C. G. L. 1927.

"(c) BEAUTY PARLORS.—Each person operating a Beauty Parlor shall pay a license tax of Ten ($10.00) Dollars." Sec. 7, Ch. 14491, Acts of 1929.

One of the meanings of employment is "occupation." Synonyms are: work, business, vocation, calling, office, service, commission, trade, profession," Webster's New International Dictionary.

To the extent that Section 5871 (3952) Compiled General Laws, 1927, is *inconsistent* with the rule of the common law that a married woman cannot enter into contractual relations in employments, the common law rule is modified or abrogated. Section 87 (71) Compiled General Laws, 1927.

Where a married woman is not liable for her torts that are predicated upon contract relation because of her inability to contract at common law, if the disability to contract be removed by the statute, the basis and reason of the common law rule is thereby abrogated and liability of the married woman for such torts results by implication of law.

While at common law a married woman is incompetent to make a valid contract and is likewise incompetent to employ an agent to act for her where she is incompetent to act for herself, yet where a statute recognizes a right of a married woman to engage "in any employment separate from her husband," and "employment" includes "occupation," a married woman may employ or designate another to perform any act or function that a statute has

enabled her to perform in person, when there is not involved a trust or confidence or a special function required to be performed by her. The power to choose an agent or to act through an agent is implied from the power conferred upon her to do the act herself. See Reinhard on Agency, Sections 35 et seq.

The second statutory provision above quoted does not exclude married women from the right to procure a license to operate a beauty parlor.

As the defendant married woman was under the law operating a beauty parlor "separate from her husband," the earnings to be her separate property, by rendering in person or through employees personal service to patrons, such married woman is liable for active affirmative torts committed by her or by her employees upon the persons of patrons while performing the service undertaken. The statutes by enabling the married woman to engage in the employment or occupation "separate from her husband," to that extent removed her common law disability of coverture and render her liable as though she were not married for torts committed in the conduct of such employment or occupation. See Gillies v. Lent, 2 Abbotts' Pr. (NS) N. Y. 455. See also Gentry-Futch Co. v. Gentry, 90 Fla. 595, 106 So. 473; 1 Cooley on Torts (4 Ed.) page 216.

In Graham v. Tucker, 56 Fla. 307, 47 So. 563, 19 L. R. A. (NS) 531; 131 Am. State Rep., 124, the defendants, *husband and wife*, conducted on the separate property of the wife, a swimming pool for public bathing purposes; and it was held that under the circumstances there alleged, the wife was not liable in an action of tort for the particular negligence of nonfeasance charged against husband and wife.

BUFORD, C.J., AND TERRELL AND DAVIS, J.J., concur.

ELLIS, J. (Dissenting).—Mrs. Daisy Addington, a married woman, owned a Beauty Shop in St. Petersburg. Such places have become so generally known and patronized by

the feminine branch of our population the Court may well take judicial notice that the service sought to be performed to that part of the population in such places is to increase by artificial means the pulchritude of the fair sex, by appropriate treatment of the hair and facial features, in which they already excel. Apparatus-tonsorii, aside from shears, adhesive plaster, and other accessories, are used sometimes with disappointing and not infrequently painful results.

Mrs. Banfield, another married woman, seeking service in such an establishment for a "permanent wave" sustained painful injuries to her scalp by the inexpert application of "live steam" to her hair through one of the implements used in the shop by an employee of Mrs. Addington.

Mrs. Banfield and her husband sought redress against Mrs. Addington and her husband in the sum of four thousand dollars for the injury to Mrs. Banfield's scalp perpetrated upon her by the inexpert service of Mrs. Addington's employee which Mrs. Banfield alleges seriously interfered with her earning capacity of fifteen dollars per week besides causing her to suffer great physical and mental anguish and producing many "disorders and derangements" which are "permanent and incurable" in their nature.

The declaration contains five counts of several hundred words each and describes a condition of suffering and anguish which has come upon the lady in her lawful effort to improve her personal appearance by the inexpert and negligent work of Mrs. Addington's employee.

Mrs. Addington and her husband demurred to the declaration. Among the grounds enumerated were that a married woman may not be required in law to respond in damages for such a tort; that her property may not be subjected to a judgment at law sought to be obtained in such a case; that the injury, if any, resulted from the act of an employee of Mrs. Addington who is by reason of her

status as a married woman incapable of making a contract of employment with any servant or agent and that the alleged tort grows out of a contract with Mrs. Addington, who is incapable of entering into a contract.

The demurrer was sustained and Mr. and Mrs. Banfield took a writ of error and seek a reversal of the judgment of Judge Bird before whom the action was sought to be maintained.

The majority opinion concedes the proposition that at common law Mrs. Addington is not liable for a tort growing out, founded upon or directly connected with a contract. Graham v. Tucker, 56 Fla. 307, 47 South. Rep. 563; Meeks v. Johnston, 85 Fla. 248, 95 South. Rep. 670.

That the wrong alleged to have been committed grew out of a contract made between two married women through the inexpert treatment of Mrs. Banfield's hair by another person under another contract for her services with Mrs. Addington is clearly stated by the declaration.

There is no allegation that the alleged tort was the joint act of husband and wife nor that she acted under his coercion. The action rests purely upon nonfeasance and is an action on the case for negligence of an employee not in relation to any property of the married woman nor injury to adjoining property in the repair of her own but solely for the negligence of an employee in rendering personal service to another and may be sustained if at all only upon the theory of respondeat superior.

The duty which Mrs. Addington owed to Mrs. Banfield grew out of, was founded upon and directly connected with, a contract between her and Mrs. Addington to perform the service of furnishing a "permanent wave" to Mrs. Banfield. By reason of that contract Mrs. Addington owed to Mrs. Banfield the duty of performing the work in a workmanlike manner. It is not the contract that is the gravamen of the offense but that the alleged negligent act grew out of a contract relation, was founded upon and directly

connected with a contract. The mere fact that Mrs. Banfield entered the establishment of the defendant and sought for a consideration to be paid to the latter the service she desired established a contractual relation between the parties. Whether the contract constitutes he gravamen of the action or is mere inducement the alleged tortious act consisted in a failure to properly and expertly perform a duty which flowed from it.

The majority opinion assumes that the act of Mrs. Addington through her employee in injuring the scalp of Mrs. Banfield was the "positive tortious act" of Mrs. Addington. The language is a misuse of terms. The word in the connection in which it is used in the majority opinion means "affirmative" as opposed to "negative."

The reasoning of the opinion is: A married woman is liable in damages civilly for her "positive," "affirmative" or "pure" torts. The act of Mrs. Addington's employee in failing to use due care in treating the hair of Mrs. Banfield was a "positive," "affirmative," "pure" tort of Mrs. Addington, therefore she is liable civilly in damages to Mrs. Banfield.

The case cannot be stated except by the use of negatives. The declaration charges the act complained of to be the result of carelessness, negligence and want of due care in the operation of a certain apparatus by an employee. There is no similarity between the statement of the case in the declaration and one in which a person is charged with a pure, or affirmative tort like trepsass on real estate, assault and battery, libel, slander and malicious prosecution. 13 R. C. L. 1221.

The authority for the majority opinion is not found in the common law nor is there any constitutional or statutory regulation concerning ownership of property by married women as separate statutory property from which the inference may be drawn that she may be held civilly liable in action for damages for her failure to discharge a duty

to another which duty in anywise rested upon or is connected with a contract.

The case of Graham v. Tucker, *supra*, discussed the question fully. The reasoning is clear and sound and referring to the case of Prentiss v. Paisley, 25 Fla. 927, 7 South. Rep. 56, the court said: "there is not the slightest intimation that the liability of a married woman for her torts is in anyway enlarged or affected by the constitution or laws of Florida changing the common law as to her ownership of a separate legal estate and giving her power to make certain specified contracts with reference thereto, and making the same liable *in invitum* in equity to certain specified debts."

The law as it was by this Court declared to exist in Graham v. Tucker, *supra*, has not been changed by constitution or statute. The theory of torts as expounded in the majority opinion and as affecting persons *sui juris* was the law when the Graham-Tucker case was written and is the law to-day. The theory is not a new one. It was known to lawyers of other generations long prior to this one but no theory has ever existed under which a married woman's failure to discharge a duty to another which she owed because of a contractual relation with that other has ever been translated into an "affirmative," positive, pure tort.

I think, therefore, that the judgment should be affirmed.

BROWN, J., concurs.