346 So.2d 635 (1977)
FLORIDA SOUTHERN ABSTRACT & TITLE COMPANY, Appellant,
v.
Peter S. BJELLOS and Wife, Violet L. Bjellos, Appellees.
No. 76-1578.
District Court of Appeal of Florida, Second District.
June 1, 1977.
Paul Ritter, Winter Haven, and A.H. Lane, Lane, Massey, Trohn, Clarke, Vertrand & Smith, P.A., Bartow, for appellant.
Joe L. Sharit, Jr., Straughn, Sharit, Bunn & Chilton, P.A., Winter Haven, for appellees.
GRIMES, Judge.
This case involves the legal responsibility of a title insurance company when it acts in the capacity as a closing agent.
The appellees entered into a written contract to purchase a house from the Coles. The contract was prepared by a real estate broker who was to obtain his commission from the Coles. The contract provided that the appellees would pay for title insurance and also contained the statement "subject to negative termite inspection paid by seller." The broker placed an order for title insurance with the appellant.
The residence was inspected on April 16, 1974, by Wright Pest Control, Inc. which found an active infestation of subterranean termites. Wright treated the termite infestation on April 18, 1974. Wright then issued a termite "guaranty" which guaranteed to inspect the premises annually and to further treat the premises for subterranean termites if an infestation is found, providing an annual premium is paid to the company. On April 19, 1974, Wright sent a letter to the Coles which simply stated that on that date he had inspected the property and did not visually observe any termite activity.
The closing took place on May 3, 1974. The appellant undertook to supervise the closing, and no attorneys were involved. At the closing, the appellees were furnished with Wright's termite guaranty. They did *636 not receive a copy of Wright's letter of April 19, 1974, nor did they know of its existence. The transaction was closed, and the appellees moved into the house.
Two months later a heavy infestation of drywood termites was discovered in the attic. The appellees incurred substantial expense in repairing the damage caused by the termites. Appellees then filed suit against the appellant contending that had they been properly informed by the closing agent that a negative termite inspection report had not been furnished, they would have been put on notice to look further into the possibility of termites being in the house and thereby avoid the damages they ultimately suffered. Following the taking of depositions, the court entered a summary judgment to the extent of ruling as a matter of law that the appellant had breached a legal duty owed to the appellees to see that the appellees were furnished a negative termite inspection report prior to the closing of the purchase. The court left open for determination at the trial the issues of (1) whether there was a causal connection between the appellant's breach of duty and the appellees' damages and (2) the amount of damages. Among the witnesses at the trial was an expert who testified that the house had been infested with drywood termites at the time of closing. The court ultimately entered a judgment for the appellees in the sum of $8,329.
On this appeal, the appellant first contends that its motion for summary judgment should have been granted because there is no evidence that it breached any legal obligation owed to the appellees. The appellant argues that since the only fee it received was for the issuance of title insurance, it undertook no responsibility to appellees with respect to whether they received a negative termite inspection report at closing. We cannot accept this proposition.
While the appellant makes no specific charge for its services in supervising the closing, there is no doubt that these services are provided as an inducement to the purchase of title insurance. When the appellant undertakes to supervise a closing, it is obligated to do so in a reasonably prudent manner. As our supreme court in Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), stated:
"In every situation where a man undertakes to act, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another, just as if he had bound himself by an obligatory promise to exercise the required degree of care. Street's Foundations of Legal Liability, vol. 1, page 92. And even `where a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case... .'"
The appellee, Mr. Bjellos, testified that when the question of termite inspection came up at closing, the Coles handed the appellant's closing agent a piece of paper which she looked at and stated "that's just great" and went on with the closing. Mr. Bjellos said he was not furnished any documentation with respect to termites at the closing but later discovered the Wright termite guaranty among the papers which he carried home with him. Mrs. Bjellos and Mr. Cole did not recall any conversation about termites or termite inspection at the closing. The appellant's closing agent said that the only thing involving termites which occurred at the closing was when Mr. Cole handed the appellees a "termite bond." She said she never looked at the document to see if it constituted a negative termite inspection report. Appellant's vice president admitted that where the contract calls for a negative termite inspection report, the closing agent should not close the transaction without such a report being furnished.
The provision in the contract calling for a negative termite inspection carried with it *637 the necessary implication that the parties were entitled to be informed that this had been accomplished. The so-called "guaranty" furnished at closing did not constitute a negative termite inspection report. Therefore, we believe that the court correctly concluded that the appellant had breached a legal duty to the appellees in failing to properly carry out its responsibility as a closing agent. We do not suggest that the appellant was obliged to render a legal opinion upon the sufficiency of whatever documentation was furnished at closing, but under the circumstances the appellant's agent was at least obligated to examine the instrument presented and point out the possibility that it did not constitute the "negative termite report" which was a condition to closing. Therefore, the court properly denied the appellant's motion for summary judgment.
On the other hand, we believe the court erred in entering a partial summary judgment for the appellees. In the first place, the record contains an affidavit of Mr. Cole in which he states that about a week before closing he told Mr. Bjellos that Wright Pest Control, Inc. had discovered some termites in the house and had treated the house for these termites. This was sufficient to create a genuine issue of fact on the causal connection between the appellant's failure to ascertain whether a negative termite inspection report had been obtained and the appellees' purchase of the house. The judge apparently viewed the causal connection issue he had left open for trial as pertaining only to the question of whether there were termites in the house when it was purchased, because he declined to permit appellant to cross-examine Mr. Bjellos about his alleged conversation with Mr. Cole concerning termites prior to closing.
Moreover, appellant suggests that it was irrelevant that appellees did not receive a negative termite inspection report at closing because a letter equivalent to such a report was actually mailed by Wright to the Coles several days before. The appellees respond by arguing that the failure to receive this report at closing prejudiced their ability to sue Wright for not pointing out the existence of termites because they are now unable to show that when they bought the house they relied upon his letter. This strikes us as a mixed question of law and fact which also should not be determined by summary judgment.
Since the final judgment is predicated in part upon the erroneous partial summary judgment, it must be reversed. The case is remanded for proceedings consistent with this opinion.
HOBSON, Acting C.J., and OTT, J., concur.