382 So.2d 363 (1980)
The FIDELITY AND CASUALTY COMPANY OF NEW YORK, Appellant,
v.
L.F.E. CORPORATION and J.E. Greiner Engineering Sciences, Inc., Appellees.
No. 79-1342.
District Court of Appeal of Florida, Second District.
March 14, 1980.
Rehearing Denied April 14, 1980.
*364 J. Brent Walker and James M. Shuler of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., Tampa, for appellant.
David J. Kadyk and Ted R. Manry, III, of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellee, L.F.E. Corporation.
Judith W. Simmons of Harrison, Greene, Mann, Rowe, Stanton & Mastry, Tampa, for appellee, J.E. Greiner Engineering Sciences, Inc.
CAMPBELL, Judge.
From an adverse final judgment granting motions to dismiss its third amended third party complaint, the appellant, The Fidelity and Casualty Company of New York, takes this appeal.
The original proceeding below was brought against the appellant by the Hillsborough County Aviation Authority as plaintiff (hereinafter referred to as "Authority"), on a cause of action arising out of an insurance policy issued by the appellant insuring Authority against damage by fire, lightning, windstorm or other perils at Tampa International Airport, owned and operated by Authority. Appellant then filed a third party complaint against the appellee L.F.E. Corporation. L.F.E. was the contractor that originally installed the revenue control equipment for the parking lots at Tampa International Airport pursuant to contract documents and specifications for that equipment prepared by the appellee, J.E. Greiner Engineering Sciences, Inc., pursuant to its contract with Authority to act as the consulting engineer on the entire Tampa International Airport project.
Authority and the appellant subsequently settled their differences and an order of dismissal of the original complaint was entered by the trial court leaving only the third party complaint against L.F.E. Thereafter, an amended third party complaint was filed by the appellant alleging separate causes of action against both L.F.E. and Greiner. Motions to dismiss the amended third party complaint for failure to state a cause of action were filed by both *365 L.F.E. and Greiner and were granted. Appellant then filed a second amended third party complaint, again alleging separate causes of action against both L.F.E. and Greiner, and motions to dismiss for failure to state a cause of action were again granted by the trial court. Appellant then filed its third amended third party complaint, again alleging separate causes of action against both L.F.E. and Greiner, and the court then entered its final judgment granting motions to dismiss again filed by both L.F.E. and Greiner for failure to state a cause of action, the final judgment providing that appellant take nothing by its third party complaint and that costs be assessed as thereafter to be taxed in favor of the appellees and against the appellant.
L.F.E.'s contract with Authority for the installation of the revenue control system was apparently entered into on December 5, 1972, and, though it is not clear in the record, was apparently completed prior to December of 1973.
After L.F.E. had installed the revenue control system, Greiner, as a result of conferences with Authority, wrote to Authority on December 21, 1973, a letter attached as Exhibit "A" to appellant's third amended third party complaint. In that letter Greiner recommended certain steps to be taken to improve the lightning protection for the revenue control system. Thereafter, on February 4, 1974, Greiner wrote to Authority a letter attached as Exhibit "A" to the third amended third party complaint, informing Authority that Greiner was proceeding with the preparation of the contract documents for the work to be done to improve the lightning protection for the revenue control system and that they would bill for their work in accordance with their agreement with Authority dated September 6, 1966, and the work would be performed under their Contract Number XXXX-XXXX. Bids were then solicited for the installation of the lightning protection system pursuant to the contracts and specifications prepared by Greiner and a contract for that installation was entered into on the 25th of April, 1974, between Authority and the Howard P. Foley Company (hereinafter referred to as "Foley"). This lightning control system installed by Foley was accepted as complete on June 27, 1974.
Authority's original complaint against the appellant alleges lightning strikes at Tampa International Airport causing damages to the revenue control system on June 4, 1974; August 26, 1974; September 18, 1974; June 2, 18 and 24, 1975; July 11, 15 and 30, 1975; August 8 and 15, 1975; and September 6, 1975. Appellant's third amended third party complaint alleges that appellant indemnified Authority for losses sustained from lightning strikes causing damage to the revenue control system prior to May 18, 1978. Count I of appellant's third amended third party complaint applies only to L.F.E., and in essence alleges that L.F.E. breached its contract with Authority by failing to install and construct the revenue control system so as to operate within the performance requirements of the specifications. Appellant admits that L.F.E. installed the system as required by the specifications and contract prepared by Greiner, but takes the position in its third amended third party complaint that L.F.E. should have gone further and foreseen the need for a lightning protection system as allegedly required by Section 20-04 of L.F.E.'s contract with Authority. That section of the contract is referred to by the parties as the "local conditions" clause and reads as follows:
20-04 Examination of Site of the Work, Contract Documents, and Local Conditions

The Bidder is required to examine carefully the site of the proposed work, the Proposal, Plans, Specifications, and Contract Forms. He shall assume full responsibility for having familiarized himself with the nature and extent of the Contract Documents, work, locality, and local conditions that may in any manner affect the work to be done. The submission of a Proposal shall be prima facie evidence that the Bidder has complied with this requirement.
*366 Appellant, by its alleged cause of action against L.F.E., interprets that clause as requiring L.F.E. to familiarize itself with local conditions to the extent that L.F.E. should have been required to make design and specification changes other than those specified by Greiner if necessary to protect against lightning strikes.
We feel that the trial judge was correct in dismissing Count I as failing to state a cause of action against L.F.E.
Count II of appellant's third amended third party complaint also applies only to L.F.E. In that Count appellant charges that L.F.E. had some duty to install the revenue control system to withstand the effects of lightning strikes even though the contract specifications prepared by Greiner did not so require, and further alleges that in installing the system without such protection, L.F.E. negligently breached a duty owed by L.F.E. to Authority.
We also feel that the trial judge was correct in dismissing Count II as failing to state a cause of action against L.F.E.
Count III of appellant's third amended third party complaint applies only to Greiner. It alleges that Greiner entered into a contract with Authority on September 9, 1965, to furnish certain engineering services in connection with the construction of the airport terminal facilities at Tampa International Airport, and that in the performance of those obligations it prepared the contract documents and specifications for the revenue control system. It further alleges that on or after December 21, 1973, Greiner voluntarily undertook to design a lightning protection system for Authority which would provide proper shielding for the revenue control system, and that on April 25, 1974, in reliance upon those recommendations and designs, Authority executed the contract with Foley. Count III further alleges that the lightning protection system was constructed and installed according to the system designed by Greiner, and that thereafter as a result of the negligent design of the lightning control system by Greiner, Authority suffered damages by lightning strikes which were subsequently indemnified by the appellant. Count III also alleges Greiner had a duty to use a level of care required of a design professional in designing a lightning protection system and that it failed to use that level of care required of such a professional in designing a lightning protection system.
The arguments of the parties as they pertain to the dismissal of Count III of appellant's third amended third party complaint against Greiner revolve around the questions of whether the complaint and exhibits in the record allege that Greiner was acting as a "volunteer" in designing for Authority a lightning protection system and, if so, whether a cause of action could stand which alleged that the "volunteer" negligently breached duties it had assumed by failing to provide a specified standard of care in the performance of its "volunteered" acts. It is the allegation in Paragraph 15 of Count III of appellant's third amended third party complaint that "Greiner voluntarily undertook... to design a lightning protection system," which seems to cause most of the difficulties in determining whether or not appellant's Count III states a cause of action against Greiner. The letter from Greiner dated February 4, 1974, attached to appellant's third amended third party complaint as Exhibit "B", informed Authority that Greiner was proceeding with the preparation of the work and that billing for the work would be provided for per Greiner's agreement with the Authority dated September 6, 1966, and that the work would be performed under Greiner's Contract No. 672-0100. Greiner's basic contract for providing engineering services to Authority is dated September 9, 1965, attached as Exhibit "B" to appellant's first amended third party complaint. Included in that exhibit is a resolution of Authority authorizing an assignment of the contract from J.E. Greiner Company, a partnership, as it existed at the time of the formation of the contract, to J.E. Greiner Company, Inc., a subsequently formed Maryland corporation. In that resolution, there appears the statement that in addition to the basic contract of September 9, *367 1965, and subsequently amended March 3, 1966, there was a contract entered into between Authority and Greiner for "miscellaneous engineering services in connection with the airports under the supervision and control of the Authority, said contract being dated September 6, 1966." According to Greiner's letter of February 4, 1974, it was pursuant to that September 6, 1966, contract that Greiner was preparing the documents for the lightning protection system and under which Authority would be billed. Thus, it appears from the record that Greiner, under an existing contract with Authority to perform miscellaneous engineering services, came forward and made recommendations to Authority as to the proper manner to provide better lightning protection for the revenue control system at Tampa International Airport. This "coming forward" under the terms of the contract has been described by the appellant in its third amended third party complaint as Greiner "voluntarily undertaking" to design the lightning protection system.
Under Florida Rule of Civil Procedure 1.130(b), we must consider the exhibits attached to appellant's third amended third party complaint as a part of the pleadings. Woolzy v. Government Emp. Ins. Co., 360 So.2d 1153 (Fla. 3d DCA 1978); Harry Pepper & Associates, Inc. v. Lasseter, 247 So.2d 736 (Fla. 3d DCA 1971). Appellant's third amended third party complaint might have been more precisely or artfully drawn, but that is not the issue here. The sole issue is whether or not the complaint and the exhibits thereto allege a cause of action against Greiner, so as to survive a motion to dismiss. This issue was thoroughly discussed in Thomas v. Rollins, 298 So.2d 186, 187 (Fla. 1st DCA 1974), where, in quoting from the previous decision of Dawson v. Blue Cross Association, 293 So.2d 90 (Fla. 1st DCA 1974), they said in part:
At the outset we emphasize that there is a clear distinction between a motion to dismiss, a motion for summary judgment, a motion for judgment on the pleadings, a motion for directed verdict and post trial motions.
Although all persons, including pleaders, should constantly strive for perfection, it is not requisite that every complaint be a model pleading. It is not necessary, nor indeed desirable, that a plaintiff allege evidence. Aside from allegations as to jurisdiction and demand for judgment for relief the rule only requires "a short and plain statement of the ultimate facts showing that the pleader is entitled to relief."
In turning to the question of whether, if Greiner were strictly a volunteer, appellant's third amended third party complaint stated a cause of action for a breach of those duties voluntarily assumed, appellant cites us the case of Shealor v. Ruud, 221 So.2d 765 (Fla. 4th DCA 1969). There the court held a city liable where it negligently installed railroad warning devices where it assumed to act in its proprietary capacity. The court there reasoned that since the city was acting in its proprietary capacity, if the assumed duty was performed in a negligent manner, the city would be liable under the doctrine that one who assumes to act may thereby become subject to the duty of acting carefully if he acts at all. Greiner discounts Shealor by arguing that the court there was applying the stated law to a narrow set of facts applying to waiver of sovereign immunity. Appellant counters with the case of Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), a case involving the liability of a married woman for her contracts or torts. That court there held at 140 So. at page 896:
In every situation where a man undertakes to act, or to pursue a particular course, he is under an implied legal obligation or duty to act with reasonable care, to the end that the person or property of others may not be injured by any force which he sets in operation, or by any agent for which he is responsible. If he fails to exercise the degree of caution which the law requires in a particular situation, he is held liable for any damage that results to another, just as if he had bound himself by an obligatory promise *368 to exercise the required degree of care. Street's Foundations of Legal Liability, vol. 1 page 92. And even "where a man interferes gratuitously, he is bound to act in a reasonable and prudent manner according to the circumstances and opportunities of the case. And this duty is not affected by the fact, if so it be, that he is acting for reward, in other words, under a contract, and may be liable on the contract. The two duties are distinct, except so far that the same party cannot be compensated twice over for the same facts, once for the breach of contract and again for the wrong." Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 506, 12 L.R.A. (N.S.) text 933.
.....
Where a transaction complained of has its origin in a contract for service which places the parties in such a relation to each other that in attempting to perform the promised service a tort is committed, then the breach of the contract is not the gravamen of the suit brought to recover damages for the tort. And in such case the contract is considered mere inducement, creating the state of things which furnishes the occasion of the tort, but not the basis of recovery for it, and in all such cases the remedy is an action ex delicto on the case. Flint & Walling Mfg. Co. v. Beckett, 167 Ind. 491, 79 N.E. 503, 12 L.R.A. (N.S.) 924; Brown v. Boorman, 11 Clark & F. 1; Myers v. Gilbert, 18 Ala. 467; Mobile Life Ins. Co. v. Randall, 74 Ala. 170; Nevin v. Pullman Palace Car Co., 106 Ill. 222, 46 Am.Rep. 688; Zell v. Arnold, 2 Pen. & W. (Pa.) 292; Elsee v. Gatwood, 5 T.R. 143; Ashmore v. Pennsylvania Steam Towing & Transp. Co., 28 N.J.Law 180; Emigh v. Pittsburg, etc., R. Co., 4 Biss. 114, Fed.Cas.No. 4449. And so it is that where an undertaking is wholly gratuitious, an action on the case will lie for misfeasance in regard thereto. Hyde v. Moffat, 16 Vt. 271; Gill v. Middleton, 105 Mass. 477, 7 Am.Rep. 548. See, also, 26 R.C.L. 758.
Biadi v. Lawyers Title Insurance Corp., 374 So.2d 30, 35 n. 14, (Fla. 3d DCA 1979), recognizes Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), as standing for the theory that a negligent act, even though gratuitously undertaken, is subject to the scrutiny of the standard of duty of due care. This theory of liability for negligence in the acts of a volunteer was also approved in Fruehauf Corporation v. Aetna Insurance Co., 336 So.2d 457 (Fla. 1st DCA 1976). This court has also approved that theory by quoting with approval Banfield v. Addington, 104 Fla. 661, 140 So. 893 (1932), in Florida Southern Abstract & Title Co. v. Bjellos, 346 So.2d 635 (Fla. 2d DCA 1977).
Accordingly, we affirm the trial court in its dismissal of the third amended third party complaint against the appellee L.F.E. We reverse as to its dismissal of the third amended third party complaint against the appellee Greiner and remand the cause as to Greiner to the lower court for further proceedings consistent with this opinion.
HOBSON, Acting C.J., and BOARDMAN, J., concur.