J. T. Landress Highlands County Tax Collector Sebring
QUESTIONS:
1. Is the tax collector required to provide information from the records of the office of the tax collector to abstract and title companies, attorneys, realtors, or members of the general public when requested by telephone, in writing, or in person, or may he merely allow persons inquiring to search for the information themselves, providing assistance, if requested?
2. Is the tax collector liable, either individually or as tax collector, when a local abstract and title company makes an inquiry by telephone concerning whether or not taxes have been paid on certain parcels of real estate and an employee in his office gives erroneous information to the inquiring abstract and title company?
SUMMARY:
A county tax collector is not required by law to provide information from the records of his office to abstract and title insurance companies, attorneys, realtors, or members of the public, when requested by telephone, in writing, or in person, beyond those requirements relating to inspection and copying prescribed in ss. 119.01, 119.07, and 119.08, F. S. In the absence of any statutory duty or function, a county tax collector's undertaking to furnish information by telephone concerning the payment or nonpayment of ad valorem taxes on particular parcels of real estate to an abstract and title insurance company would appear to be a gratuitous or voluntary act or undertaking beyond the scope of the office or function of such officer, and any liability therefor would be personal and controlled by the common-law rules of tort liability. The issue of personal liability or whether the gratuitous or voluntary act or undertaking constituted an act or event in the scope of the office or function of the tax collector within the purview of ss. 111.07,111.071, and 768.28, F. S., necessarily involves mixed questions of law and fact which the Department of Legal Affairs is not empowered to resolve and which must be determined by the courts.
AS TO QUESTION 1:
The ad valorem tax statutes and specifically ch. 197, F. S., as they relate to the duties of a tax collector do not authorize or place upon that officer any duty to furnish information from the public records of the office to abstract and title insurance companies, attorneys, realtors, or members of the general public in any manner or for any purpose except for the notification requirements of that chapter as they relate to notices of tax sale, sale of tax certificates, or the like.
Your question also requires an analysis of ch. 119, F. S., the Public Records Law. Chapter 119 contains specific requirements relating to the duties of a custodian of public records to maintain such records for inspection or examination and to furnish copies or certified copies thereof to members of the public. Because the county tax collector is a county officer and accordingly falls within the scope of the Public Records Law, the terms of ch. 119 are pertinent to your inquiry. Section119.011(2).
Section 119.07(1), F. S., sets forth the specific duties of a custodian of public records:
 (1)(a) Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions and under supervision by the custodian of the records or his designee. The custodian shall furnish copies or certified copies of the records upon payment of fees as prescribed by law or, if fees are not prescribed by law, upon payment of the actual cost of duplication of the copies. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited and accounted for in the manner prescribed for other operating funds of the agency.
 (b) In the case of records produced under this act, when the nature or volume of records is such as to require extensive clerical or supervisory assistance by personnel of the agency involved, the agency may charge, in addition to the actual cost of duplication, a reasonable charge, approved by the Department of Administration, for the provision of such clerical or supervisory personnel. (Emphasis supplied.)
The Public Records Law and the `Government in the Sunshine Law' (s. 286.011, F. S.) mandate a policy of open government for this state and have been found by the courts to promote a public interest `of the highest order.' Byron, Harless, Schaffer, Reid 
Associates, Inc. v. State ex rel. Schellenberg, 360 So.2d 83 (1 D.C.A. Fla., 1978); reversed on other grounds, Shevin v. Byron, Harless, Schaffer, Reid Associates, Inc., 379 So.2d 633 (Fla. 1980); Town of Palm Beach v. Gradison, 296 So.2d 473 (Fla. 1974); and Board of Public Instruction v. Doran, 224 So.2d 694 (Fla. 1969). Their purpose is to `open government so that citizens can discover what their government is doing.' Browning v. Walton,351 So.2d 380 (4 D.C.A. Fla., 1977). It has been held that these statutes have been `enacted for the public benefit' and as such `should be construed liberally in favor of the public . . . . In this posture, a reasonable construction should be applied giving full measure to every effort to effectuate the legislative intent.' Wolfson v. State, 344 So.2d 611, 613 (2 D.C.A. Fla., 1977); City of Miami Beach v. Berns, 245 So.2d 38 (Fla. 1971); Canney v. Board of Public Instruction of Alachua County,278 So.2d 260 (Fla. 1973); and Krause v. Reno, 366 So.2d 1244, 1250 (3 D.C.A. Fla., 1979). As stated by the First District Court of Appeal in Florida Parole and Probation Commission v. Thomas,364 So.2d 480, 481 (1 D.C.A. Fla., 1978), `the spirit, intent and purpose of the statute requires a liberal judicial construction in favor of the public and a construction which frustrates all evasive devices.'
I am persuaded that where the Public Records Law is concerned, all doubts about the construction of the statute should be resolved liberally in favor of openness and access by the public. Section119.07(1)(a), F. S., requires the custodian of public records, in addition to permitting their inspection and examination and providing assistance, if requested, to `furnish copies or certified copies of the records upon payment of fees as prescribed by law . . . .' (Emphasis supplied.) The word `furnish' is defined to mean supply, give, afford, or provide what is necessary to satisfy someone's need for a certain thing. Words and PhrasesFurnish; 37 C.J.S. Furnish; and Webster's Third New InternationalDictionary, Furnish. Accordingly, the custodian is charged with the responsibility to provide or supply copies of public records to one so requesting so long as the authorized fees are paid. There is no express or implied requirement in the statute that the requesting party make the demand in person, as opposed to requesting copies by telephone or in writing, and I decline to read such a requirement into the statute. Therefore, in the absence of such a requirement, and in view of the public policy enunciated in the cited cases, it is my opinion that a request forcopies of records which is sufficient to identify the records desired must be honored by the custodian, whether the request is in writing, over the telephone, or made in person, so long as the required fees are paid.
Your question appears to ask not only whether copies of public records are required to be furnished by the custodian but also whether the custodian or his employees are required to give out information from public records when requested in person, over the telephone, or in writing. My analysis of chs. 119 and 197, F. S., reveals that, while the tax collector has the affirmative duty to make the public records of his office available for inspection and examination by the public and to furnish copies thereof upon a request in person, in writing, or by telephone, neither chapter imposes an affirmative duty on the tax collector or his employees to give out the information on request in person, by telephone, or in writing, except to the extent of allowing personal inspection by the requesting party or furnishing copies as discussed above.
AS TO QUESTION 2:
Your second question solicits an opinion as to both the tax collector's individual or personal liability and his liability as a county officer.
As noted hereinabove, there are no stipulations in ch. 197 or ch. 119, F. S., which expressly require the tax collector to provide information over the telephone to abstract and title insurance companies, attorneys, realtors, or members of the general public. Even if there were a requirement to furnish such information, it would be a ministerial function or impliedly such a function. Seegenerally Manatee County v. State, 190 So. 687, 689 (Fla. 1939); State ex rel. Seaboard Air Line R. Co. v. Gay, 35 So.2d 403 (Fla. 1948); and C.D. Utility Corporation v. Maxwell, 189 So.2d 643 (4 D.C.A. Fla., 1966). However, in the absence of a statutory requirement therefor, the undertaking of giving information as outlined in your request would, under existing law, appear to be purely a gratuitous or voluntary action on the part of the tax collector and beyond the scope of his office or function.
Under the circumstances set forth in your inquiry, the question of any individual or personal liability, liability as a public officer, or common-law liability is a mixed question of law and fact which this office is not empowered to determine. Of necessity, therefore, this opinion will deal generally with the rules of law governing the common-law tort liability of public officers with respect to their acts and omissions with relation to their ministerial duties or gratuitous or voluntary actions or undertakings.
There does not appear to be any judicial precedent pertinent to the peculiar factual circumstances outlined in your inquiry. Further, there is no statutory requirement for the rendering of the function or service described in your second question. Accordingly, in the absence of legislative or judicial direction, it appears that any liability which would accrue would be individual or personal and not as a public officer. See Palm Court Corporation v. Smith, 137 So. 234, 236 (Fla. 1931); Barfield etux. v. Addington et ux., 140 So. 893, 896, 897 (Fla. 1932); and First National Bank of Key West v. Filer, 145 So. 204 (Fla. 1933). Based upon the case law, the general common-law rules of tort liability on the part of the tax collector, individually and personally, would appear to control after determination of the factual question of whether there existed any privity between the tax collector and the abstract and title company which would cause an implied duty to arise on the part of the tax collector to act with ordinary, reasonable, prudent care to furnish accurate information to the abstract and title insurance company and whether that company relied and acted upon the information provided, to its detriment, and suffered damages which could have been reasonably foreseen by the tax collector. Cf. Florida Packing Ice Company v. Carney, 41 So. 190 (Fla. 1906), and 72 Am. Jur.2dState Local Taxation ss. 888, 889.
Section 768.28, F. S., provides, inter alia, that in certain circumstances the state for itself and its subdivisions has waived the cloak of sovereign immunity when the injury or loss results from acts or omissions that occur within the scope of the office.See especially s. 768.28(9), which states:
 (9) No officer, employee, or agent of the state or its subdivisions shall be held personally liable in tort for a final judgment which has been rendered against him for any injuries or damages suffered as a result of any act, event, or omission of action in the scope of his employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property.
See also ss. 111.07 and 111.071, F. S., providing that a county may provide an attorney to defend an officer against civil actions for acts or omissions arising out of or in the scope of his office or function and that a county may pay the damages, costs, and attorney's fees arising out of a final personal judgment against an officer held personally liable in a civil law suit arising out of actions within the scope of the officer's function. These statutes are brought to your attention; but the question of whether the acts set forth in your inquiry would constitute acts or events in the scope of your office or function within the purview of ss. 111.07, 111.071, and 768.28, in the absence of any statutorily prescribed duty or function, would necessarily involve mixed questions of law and fact for determination by the courts. Further, your attention is directed to the recent case of Commercial Carrier Corp. v. Indian River County, 371 So.2d 1010
(Fla. 1979), in which the Supreme Court held, among other things, that the `general duty'/'special duty' doctrine or rule of tort liability with respect to public agencies and officers, enunciated in Modlin v. City of Miami Beach, 201 So.2d 70 (Fla. 1967), and in its ancestry and progeny, is no longer applicable in light of the passage of s. 768.28; and the tort liability or immunity of government officials and entities is now founded upon a policymaking or planning basis versus an operational basis, which may affect or temper the rules of tort liability enumerated in earlier state cases and textual authorities.
Prepared by: Frank A. Vickory, Assistant Attorney General