221 So.2d 765 (1969)
Robert H. SHEALOR, by His Next Friend and Natural Guardian, Walter H. Shealor, and Walter H. Shealor, Individually, Appellants,
v.
L.O. RUUD, a/K/a Lester Ruud, and Florence Ruud, and the City of Winter Park, a Municipal Corporation Organized and Existing under the Laws of the State of Florida, Appellees.
No. 2164.
District Court of Appeal of Florida. Fourth District.
April 7, 1969.
Rehearing Denied May 13, 1969.
*766 George Adler and Irvin A. Meyers, of Meyers, Mooney & Langston, Orlando, for appellants.
Monroe E. McDonald and Wilson Sanders, of Sanders, McEwan, Schwarz & Mims, Orlando, for appellees.
CROSS, Judge.
Appellants-plaintiffs, Robert H. Shealor, a minor, by his next friend and natural guardian, Walter H. Shealor, and Walter H. Shealor, individually, appeal from a final judgment entered on the pleadings in favor of the appellee-defendant, City of Winter Park, in an action for damages resulting from an auto train collision occurring in the City of Winter Park. We reverse.
The plaintiffs' amended complaint against the defendant-city and others, omitting the formal parts and those parts of the complaint which are not necessary for the determination herein, alleged in substance that the defendant-city was negligent in the following particulars:
"22(e) By planning and thereafter providing and maintaining a railroad crossing sign at a height of 16 feet 2 inches, a distance of 102 feet west of said crossing, said sign being a flashing amber light and placed in a direct line of vision and at the same height as other flashing amber lights located at the intersection of Park Avenue and Morse Boulevard and at the intersection of Morse Boulevard and New York Avenue in said defendant City, thereby being misleading, confusing, a nuisance, and a trap to *767 drivers of automobiles traveling east on said Morse Boulevard, as same was misleading and confusing to said James Finnie at the aforesaid date, time and place of aforesaid accident."
(James Finnie was the driver of the car in which the minor plaintiff was passenger.)
The complaint further asserts that the defendant-city assumed a duty to the minor plaintiff in the following language:
"23(e) That prior to and at the time of the accident alleged herein the said defendant City, if not otherwise owing a duty to said minor plaintiff to provide proper, adequate and safe warnings of said Atlantic Coast Line Railroad Company's aforesaid crossing at Morse Boulevard did nevertheless assume such duty by planning, undertaking and providing warnings at said crossing in the manner heretofore alleged.
Exhibits G-1 and G-2[1] were attached to the complaint and made a part thereof.
The defendant answered, stating in essence as an affirmative defense that the actual omissions to act on the part of the city as alleged in the complaint were done or not done by the defendant-city acting by and through its authorized governing body, the City Commission of the City of Winter Park, in the exercise of a legislative or quasi-legislative function of the governing body of the City of Winter Park, and by reason therefor the defendant, a municipal corporation, is immune from suit by the present plaintiffs for the damages alleged in the amended complaint, and the plaintiffs are by reason thereof precluded from recovery.
At this state of the proceedings the city then moved for judgment on the pleadings, setting forth:
"1. That under the issues formed by the Plaintiffs' Amended Complaint, the pleadings affirmatively show that there is no duty on the part of this Defendant which has been breached, hereby enabling this Plaintiff to recover against this Defendant."
The trial court granted defendant-city's motion and entered the final judgment appealed.
The question for our determination is whether or not the amended complaint on its face was insufficient as a matter of law to state a cause of action; or as stated another way, was the amended complaint *768 legally sufficient to withstand a motion for judgment on the pleadings.
A motion for a judgment on the pleadings is proper after the pleadings are closed and within such time as not to delay the trial. Rule 1.140(c), F.R.C.P., 30 F.S.A. The pleadings are closed when the answer has been filed if it does not contain a counterclaim or crossclaim, unless the court has ordered a reply to an answer. If a counterclaim or a crossclaim has been filed, there must be a reply or an answer, respectively. Riverside Bank v. Florida Dealers and Growers Bank, Fla.App. 1963, 151 So.2d 834.
In a motion for judgment on the pleadings the moving party admits for the purpose of the motion the facts well pleaded by his adversary despite their denial in the movant's pleadings. And the movant also admits the untruth of his own allegations which have been denied by his adversary. Greater Miami Telephone Answering Service v. A-1 Answering Service, Fla.App. 1962, 141 So.2d 619. Averments in a pleading to which no responsive pleading is required are taken as denied or avoided. Rule 1.110(e), F.R.C.P.
Traditionally, municipal corporations have been held immune from suit for tortious acts or omissions connected with the performance of their governmental functions. 18 McQuillin, Municipal Corporations § 53.25 (3d ed. 1963).
Florida has by judicial decision discarded the traditional governmental-proprietary distinction and held that its municipalities may be liable for negligent performance of governmental functions. Hargrove v. Town of Cocoa Beach, Fla. 1957, 96 So.2d 130. In obliterating the governmental-proprietary distinction underlining the municipal immunity doctrine, the supreme court felt that the common law maxim which had supported the distinction, i.e., "The king can do no wrong," is an anachronistic concept and it specifically rejects the argument that it is beter for an individual to suffer a grievous wrong than to impose liability on the people vicariously. The supreme court stated that the doctrine of respondeat superior is applicable. It did, however, confine its holding to negligent acts. The court expressly rejected municipal liability for torts occurring in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions.
Since 1815 the law of this jurisdiction had imposed liability upon municipalities for damages resulting from the negligent performance of proprietary functions. The Hargrove specifications of the legislative and judicial functions as constituting the area of continuing immunity obviously implied that the performance of executive or administrative functions will constitute an area of potential liability. Modlin v. City of Miami Beach, Fla. 1967, 201 So.2d 70. Thus now as in the past, municipalities may be held liable for the negligent performance of proprietary functions.
In the instant case there was no duty requiring the defendant-city to plan, undertake and provide the signal device at the intersection in question. Its action in this connection was voluntary. The city had the power to provide for the said warning at the crossing if in its discretion the warnings were necessary, but it was not required to do so.
The question of what the city did or permitted at the intersection toward the planning, undertaking and providing of warnings is before us, and whether or not its acts and omissions in that regard were in the exercise of a governmental function or a proprietary function must be decided. Cases are uniform in all jurisdictions which allude to the principle that where a municipality undertakes to protect a street or bridge by lights, it is liable for negligence if it does so in an insufficient manner. *769 City of Freeport v. Isbell, 1878, 83 Ill. 440, 25 Am.R. 407. The City of Freeport had lighted a certain bridge where the accident occurred as well as the street. An injury arose from the fact that the light furnished by the city was insufficient to afford proper protection. In the City of Freeport case the city had omitted to light a portion of the street. It was held not liable, but the court said:
"In this case, if the City of Freeport under the power conferred by the charter had assumed to light the street where the accident occurred but had exercised the power in a negligent manner and had failed in the exercise of the power to furnish light sufficient to afford proper security from danger, a different rule would prevail, i.e., the rule that where a municipality undertakes to protect a street or bridge by lights it is liable for negligence if it does so in an insufficient manner."
The rule determining when a municipality is exercising a governmental function as distinguished from a proprietary function is difficult to formulate. It has been said more than once that all that can be done with safety is to determine each case as it arises. A factor to consider in determining whether a particular function of a municipality is proprietary is whether the function could be performed as well by a private corporation. Leemon v. South Jersey Port Commission, D.N.J. 1956, 145 F. Supp. 828.
It is alleged in the instant case that the defendant-city assumed a duty to the minor plaintiff by planning, undertaking and providing warnings at the said crossing, i.e., maintaining a railroad crossing sign at a height of sixteen feet, two inches, a distance of 102 feet west of the said crossing, and that the sign, being a flashing amber light, was placed in a direct line of vision and at the same height as other flashing amber lights located at the said intersection, thereby being misleading, confusing, a nuisance and a trap to drivers of automobiles traveling east on the said boulevard, and that this was misleading and confusing to a driver of the vehicle in which the minor plaintiff was riding as a passenger. The exhibits attached to plaintiff's complaint show vividly that the function of providing warnings at the said crossing was a function that could be performed by a private corporation, i.e., the railroad company, as well as by the defendant-municipality. In fact, after receiving various complaints about the poor marking of the railroad crossing in question, the city wrote to the railroad requesting them to make the necessary improvements to the intersection.
Thus the defendant-city in having elected to install and having installed the warning system in question performed a proprietary function. It was the proprietary duty of the city not to permit its operation in a manner calculated to cause injuries to others.
Since the assumed duty herein was purely proprietary in nature, if the assumed duty is performed in a negligent manner, the municipality would be liable under the basic ancient learning that one who assumes to act may thereby become subject to the duty of acting carefully if he acts at all.
Accordingly, the final judgment entered on the pleadings in favor of the defendant-city is reversed and the cause remanded for further proceedings consistent herewith.
Reversed and remanded.
McCAIN and REED, JJ., concur.
NOTES
[1] EXHIBIT G-1
 March 15, 1963
 "Mr. W.T. Quarles
 Atlantic Coast Line Railroad
 76 West Church Street
 Orlando
 Florida

"Dear Mr. Quarles:
We have had a number of complaints about the poor marking of the railroad crossing at Morse Boulevard.
The City has painted railroad crossing warnings in the street to warn people of this crossing.
In reviewing the Florida Statutes we find that 320.46 requires reflective signs some distance before the crossing. We would appreciate your conforming to the provisions of this statute to give additional warnings.
 Sincerely yours,
 Richard G. Simmons
 City Manager"
 EXHIBIT G-2
 March 19, 1963
 "Mr. Richard G. Simmons,
 City Manager,
 City of Winter Park,
 Winter Park, Florida.
"Dear Mr. Simmons:
This will acknowledge receipt of your letter of March 15th in connection with complaints you are receiving about the poor marking of the railroad crossing at Morse Boulevard.
This matter is being given immediate handling, and I will advise you later.
 Yours very truly,
 W.T. Quarles
 Assistant General Freight Agent"