Mr. Donald C. Roberge City Attorney City of Pompano Beach 101 S.W. 1st Avenue Post Office Box 2083 Pompano Beach, Florida 33061
Dear Mr. Roberge:
This is in response to your request for an opinion on the following question:
 WOULD THE ENACTMENT OF A MUNICIPAL ORDINANCE PROHIBITING THE SOUNDING OF RAILROAD TRAIN HORNS AND WHISTLES, AS AUTHORIZED BY CHAPTER 84-73, LAWS OF FLORIDA, SUBJECT THE MUNICIPALITY TO POTENTIAL TORT LIABILITY FOR INJURIES SUSTAINED AS A RESULT OF MALFUNCTIONING TRAIN-ACTIVATED AUTOMATIC TRAFFIC CONTROL DEVICES?
You state in your letter of inquiry that the City Commission of the City of Pompano Beach is considering the enactment of an ordinance prohibiting the sounding of railroad train horns and whistles between the hours of 10:00 p.m. and 6:00 a.m. at signalized grade crossings, as authorized by Ch. 84-73, Laws of Florida, codified as s 351.03(3), F.S. (1984 Supp.). You wish to know in light of the language contained in subsection (3)(b) of that statute whether the municipality is subjecting itself to any additional tort liability by the enactment of the proposed ordinance.
Subsection (3)(a) of s 351.03, F.S. (1984 Supp.), provides:
 No railroad train of a railroad company operating wholly within this state may emit an audible warning signal between the hours of 10 p.m. and 6 a.m. in advance of any public at-grade crossing with train-activated automatic traffic control devices, which include flashing lights, bells, and crossing gates, where the municipality or county has in effect an ordinance that unconditionally prohibits the sounding of railroad train horns and whistles during such hours at all public at-grade crossings so signalized within that municipality or county and where the municipality, county, or state has erected signs at the crossings involved announcing that railroad train horns and whistles may not be sounded during such hours. Signs so erected shall be in conformance with the uniform system of traffic control devices as specified in s. 316.0745.
See also, subsection (2) of s 351.03, F.S. (1984 Supp.), which provides that "[e]xcept as provided in subsection (3), any railroad train approaching within 1,500 feet of a public at-grade crossing shall emit a signal audible for such distance." Thus, a municipality may enact an ordinance prohibiting the sounding of railroad train horns and whistles of railroad companies operating wholly within this state during the designated hours if the crossing has train-activated automatic traffic control devices, which include flashing lights, bells and crossing gates, and if the required signs have been erected. Cf., AGO 85-22 concluding that the Department of Transportation is authorized to erect such signs on all state roads that are subject to such an ordinance and which are traversed by trains of a railroad company operating wholly within the state.
The language about which you have expressed concern is contained in subsection (3)(b) of the new law: "Nothing in this subsection shall be construed to nullify the liability provisions of s.768.28." You express concern that this provision may affect existing case law as to a municipality's liability for a malfunctioning train-activated automatic traffic control device where the municipality has adopted an ordinance pursuant to the new statute.
The Florida Supreme Court in the seminal case in this area of tort law, Commercial Carrier Corp. v. Indian River County,371 So.2d 1010 (Fla. 1979), set forth the test to be applied in determining governmental liability. The Court held that although governmental sovereign immunity had been waived by s 768.28, F.S., on a broad basis, certain "discretionary" governmental functions remain immune from tort liability. Id., at 1022. The Supreme Court adopted the analysis which distinguishes between the "planning" and "operational" levels of decision-making by governmental agencies. The Court specifically concluded "that the maintenance of a traffic signal light which is in place does not fall within that category of governmental activity which involves broad policy or planning decisions. This is operational level activity." (emphasis in original) Id. The Florida Supreme Court has recently reexamined at length the issue of governmental liability for alleged torts. In Trianon Park Condominium Association, Inc. v. City of Hialeah, Case No. 63,115 (April 4, 1985), the Supreme Court emphasized that s 768.28, F.S., "which waived sovereign immunity, created no new causes of action, but merely eliminated the immunity which prevented recovery for existing common law torts committed by the government." Slip Op. at 2. Thus, "for there to be governmental tort liability, there must be either an underlying common law or statutory duty of care with respect to the alleged negligent conduct." Id., at 7. In order to clarify the concept of governmental tort liability, the Court placed governmental functions and activities into four categories. Id., at 10. In the first category, the Court placed, among others, legislative functions. The Supreme Court stated:
 Clearly, the legislature, commissions, boards, city councils, and executive officers, by their enactment of, or failure to enact, laws or regulations, or by their issuance of, or refusal to issue, licenses, permits, variances, or directives, are acting pursuant to basic governmental functions performed by the legislative or executive branches of government. The judicial branch has no authority to interfere with the conduct of those functions unless they violate a constitutional or statutory provision. There has never a [sic] been a common law duty establishing a duty of care with regard to how these various governmental bodies or officials should carry out these functions. These actions are inherent in the act of governing. Slip Op. at 11.
Thus, the fact that a governing body of a municipality exercises its legislative function in adopting an ordinance pursuant to the authority contained in s 351.03(3), F.S. (1984 Supp.), would not subject the municipality to additional tort liability since such legislative action would appear to be an action inherent in the act of governing.
The legislative inclusion of subsection (3)(b) stating that nothing in that subsection shall be construed to nullify the liability provisions of s 768.28, F.S., does not create any additional liability and can be reconciled with existing case law. As set forth above, the Supreme Court in Trianon Park made it clear that the waiver of sovereign immunity contained in s 768.28, F.S., created no new causes of action, but merely eliminated existing immunity, and further for there to be governmental liability there must be either a common law or statutory duty of care. The legislative intent expressed in subsection (3)(b) does not alter this conclusion. The fact that the provisions of s768.28 are not nullified does not create a new cause of action.
A municipality, however, could be liable for the negligent maintenance of or failure to maintain the malfunctioning traffic control device, if such a duty to maintain existed. For example, the liability discussed in Commercial Carrier Corporation, supra, resulted from the negligent maintenance or failure to maintain a traffic signal light which the Court determined is on the operational level of governmental functioning. And see, Shealor v. Ruud, 221 So.2d 765 (4 D.C.A.Fla., 1969), wherein the court held that the city which installed a warning system at a railroad crossing performed a "proprietary function" and if it was performed in a negligent manner, the municipality would be liable under the rule that one who assumes to act may thereby become subject to duty of acting carefully if he acts at all. See also, Department of Transportation v. Webb, 438 So.2d 780 (Fla. 1983) (trial court properly presented case to jury on issue of department's negligent failure to maintain railroad crossing and failure to warn motorists of known dangerous condition). Cf., Department of Transportation v. Neilson, 419 So.2d 1071 (Fla. 1982) (failure to install traffic control devices and the failure to upgrade an existing road or intersection, as well as the decision to build a road or roads with a particular alignment, are judgmental, planning level functions and absolute immunity attaches).
Various provisions of the Florida Statutes pertain to the authority of local government over railroad crossings. Section316.008(1)(o), F.S. (1984 Supp.), grants to municipalities, within the reasonable exercise of the police power, the authority, to designate hazardous railroad grade crossings in conformity with criteria promulgated by the Department of Transportation. Section 316.158, F.S., gives the Department of Transportation and local government the authority to designate particularly dangerous highway grade crossings of railroads for the purpose of erecting traffic control devices. Subsection 2(b) of s 335.141, F.S. (1984 Supp.), provides that "[e]very railroad company maintaining a railway-highway crossing shall, upon reasonable notice from the department, install, maintain, and operate at such crossing an automatic flashing-light signal and ringing bell, the design of which shall be approved by the department, so that it will give to the users of such highway reasonable warning of the approach of trains or cars on the tracks of such railroad company." See also, s 316.171. Paragraph (c) of s 335.141(2) in pertinent part provides: "Any public railroad crossing opened prior to July 1, 1972, shall be maintained by the railroad company at its own expense, unless the maintenance has been provided for in another manner by contractual agreement entered into prior to October 1, 1982." This provision goes on to state: "If the railroad company fails to maintain the crossing, the unit of local government with jurisdiction over the public road that is crossed, after notifying the railroad company of the needed repairs and after giving the company 30 days after the date of receipt of the notice to make the repairs, shall proceed to make the repairs." In such a situation a municipality could be subjected to liability for repairs done in a negligent manner which is the proximate cause of an accident. However, in any particular situation the question of whether the city had maintenance responsibility over the malfunctioning traffic control devices or had undertaken to repair such traffic control devices but had performed the repairs in a negligent manner involve mixed questions of law and fact which this office is without the authority to determine and must be decided on a case-by-case basis by a court of competent jurisdiction.
In conclusion, it is therefore my opinion, unless and until judicially determined otherwise, that a municipality in the exercise of a legislative function adopting an ordinance pursuant to s 351.03(3), F.S. (1984 Supp.), incurs no additional liability thereby. Liability for malfunctioning train-activated automatic traffic control devices must be determined on a case-by-case basis.
Sincerely,
Jim Smith Attorney General
Prepared by:
Craig Willis Assistant Attorney General