David GIBSON, Plaintiff,

v.

GREYHOUND BUS LINES, INCORPORATED, and General Fire and Casualty Company, Defendants.

No. 75–278–Civ–J–S.

United States District Court, M. D. Florida, Jacksonville Division.

Jan. 16, 1976.

322

Richard B. Davis, Jr., Jasper, Fla., for plaintiff.

John H. Wilbur, Christine A. Rieger, Jacksonville, Fla., for defendants.

## ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This cause came before this Court on defendants' motion for summary judgment. In his complaint plaintiff seeks to recover both compensatory and punitive damages for alleged intentional infliction of emotional distress by defendant Greyhound Bus Lines, Incorporated. Jurisdiction is based upon diversity of citizenship and the requisite amount in controversy (28 U.S.C. § 1332). The undisputed facts giving rise to plaintiff's claim are as follows:

On July 22, 1975, plaintiff was a wildlife officer with the Florida Game and Fresh Water Fish Commission. While on patrol he was scratched by a raccoon. The raccoon subsequently died. In accordance with the directives of the Department of Health regarding submission of specimen for rabies testing, plaintiff delivered the raccoon to the Hamilton County Department of Health for shipment to Jacksonville, Florida. In Jacksonville the dead animal was to be analyzed for rabies at the Florida Department of Health and Rehabilitative Services Laboratory. The Hamilton County Health Department, through its agent Marvin Rogers, packaged the head of the animal and delivered it to defendant's agent in Jasper, Florida. Defendant's agent was informed of the contents of the package but was not told of its special importance to plaintiff. The agent was given no special instructions for handling the package. No insurance was purchased. Although Rogers had shipped animal heads on numerous prior occasions, he was not aware nor had he ever been advised of the procedure for declaring a higher value for the shipment than that provided for by tariff. He paid the regular tariff rate for the shipment. Plaintiff was not present when the package was delivered to Grey-

hound; nor was he a party to the shipping contract.

Through unexplained circumstances the package was not delivered. Sometime between July 23, 1974, and July 26, 1974, Elsie Buff, an employee of the laboratory in Jacksonville, called defendant's Jacksonville terminal to inquire as to the package's whereabouts. She was told simply that it had not arrived. She requested that a trace be made. Marvin Rogers in Jasper made a similar call to defendant's agent there. He was told only that the package had been placed on the correct bus. It appears that in neither instance was a trace of the package made. Its loss has never been explained.

Plaintiff was notified of the mishap by Marvin Rogers. As a precaution, plaintiff underwent a series of rabies vaccinations. He suffered an adverse reaction to the shots and consequently underwent a period of physical suffering, anxiety and emotional distress. He now seeks to hold Greyhound responsible.

As plaintiff states his case, he seeks to recover for defendant's negligent loss of the raccoon head and for defendant's subsequent refusal to trace it. He asserts that the two events amount to an intentional infliction of emotional distress. From plaintiff's presentation of facts and his analysis of legal theories, it is difficult to tell whether his action is for a tort or for breach of contract. It will, therefore, be considered in both lights.

The raccoon head in this case had no value in itself. Its value to plaintiff was that once in Jacksonville it could be analyzed for rabies. When the package was delivered to Greyhound and the fee paid, Greyhound assumed the duty of delivering it to its destination. No greater duty was assumed. Since Greyhound failed to deliver the package, it is liable for breach of the contract of carriage. There is, however, a limitation to defendant's liability.

Greyhound Bus Lines is a common carrier. It is subject to the regulations of National Express Tariff No. A–600 (Fla.

P.S.C. 202). In accordance with the provisions of that tariff, Greyhound is subject to Rule No. 11(c) and (d) which state in pertinent part:

(c) Carriers do not agree to deliver Express Shipments in time for any particular market, occasion or event, or on any particular lines and do not guarantee to arrive at or depart from any particular point at a specified time. . . .

(d) In consideration of the Rate charged for carrying said property, which is dependent upon the value thereof and is based upon a Released Valuation of not more than fifty ($50.00) dollars for any Shipment of one hundred (100) pounds or less . . *unless a greater value is declared at the time of shipment,* the Carriers parties to this Tariff shall not be liable in any event for more than fifty ($50.00) dollars for any Shipment which weighs one hundred (100) pounds or less . . *unless a greater value is declared by the Shipper at the time of shipment and Excess Value Charges paid.* In no event shall the Carriers be liable for more than the actual damages sustained. (emphasis added)

Greyhound is also subject to the regulation of the Florida Public Service Commission. That commission imposes a duty upon carriers to advise shippers of this limitation of liability (Rule 25–5.-78(3)). The busbill issued to the Hamilton County Health Department in this case expressed on its face the following notice:

*(NOT NEGOTIABLE) SUBJECT TO TARIFF REGULATIONS LIABILITY:* The carrier will not pay over $50.00 for any shipment of 100 pounds or less, or 50¢ per pound actual weight for any shipment in excess of 100 pounds, unless a greater value is declared and charges for such greater value paid. Maximum valuation any one shipment is limited by tariff.

In light of the fact that Greyhound is subject to the above regulations, the reasoning of *Blair v. Delta Air Lines, Inc.,*

344 F.Supp. 360 (D.C.), *Reh. den.*, 344 F.Supp. 367 (S.D.Fla.1972), *Aff'd.* 477 F.2d 564 (5th Cir. 1973), and the cases cited therein, seems to be applicable to this case.

In *Blair* plaintiff alleged gross negligence on the part of the airlines in shipping the casket and remains of his deceased wife. He sought recovery for mental anguish. Defendant asserted that the tariffs on file with the Civil Aeronautics Board constituted a limitation to the damages recoverable by plaintiff. The district court ruled in favor of defendant on the issue of limited liability. The court pointed out that a tariff required by law to be filed constituted the law binding on both parties and was not merely an element of the contract between them. The court further pointed out that tariffs may contain exculpatory clauses and limitations of liability for loss of property regardless of fault. The parties in this case (meaning defendant Greyhound and the Hamilton County Health Department), as in *Blair*, entered into a contract of carriage for the shipment of goods. The special importance of the shipment was not known to defendant. Defendant assumed no special duty towards the goods. Defendant is, therefore, entitled to the limitation of liability.

■ Plaintiff asserts several theories which he claims makes the tariff limitations not applicable to him. First, he claims that since he did not himself deliver the package to Greyhound, he did not have an opportunity to declare a higher value for the shipment. A condition of the tariff was, therefore, not met and the limitation should not apply. In an action for breach of contract, this argument is without merit. If plaintiff was not a party to the contract, he has no grounds to sue for its breach. If in any way plaintiff was a party to the contract, he still cannot escape the limitation. Defendant knew only that it was dealing with the Hamilton County Health Department. The health department was given an opportunity to declare a higher value. Plaintiff cannot divorce himself from the health department's inaction and impose a duty on defendant to advise people with whom defendant does not know it is dealing.

The cases cited by plaintiff in his supplemental memorandum of October 31, 1975,[1] are not applicable here. In those cases no procedure existed for declaring a higher value for the shipments. In this case such a procedure did exist.

■ In his second argument, plaintiff correctly asserts that Florida Statute Section 677.7–309(2) is the state statute authorizing the limitations of liability for carriers. Plaintiff further correctly asserts that Section 677.7–309(1) imposes a duty on carriers to exercise proper care and diligence in shipping goods.[2] It is plaintiff's contention then that failure of a carrier to exercise due care under subsection (1) of Section 677.7–309 renders inapplicable any limitation available under subsection (2). As this Court understands it, plaintiff's argument is that subsection (1) is a condition precedent to subsection (2). The Court does not accept plaintiff's argument. It does not seem to be a sensible reading of the statute as a whole to say that a carrier can limit its liability only in the event it is not liable.

1. *Gastwirth v. P. Mashbitz & Sons, Inc.*, 414 Pa. 445, 200 A.2d 766 (1964); *Gruen Industries, Inc. v. R. F. Downing and Co.*, 21 A.D.2d 643, 249 N.Y.S.2d 252 (1964).

2. (1) A carrier who issues a bill of lading whether negotiable or non-negotiable must exercise the degree of care in relation to the goods which a reasonably careful man would exercise under like circumstances. This subsection does not repeal or change any law or rule of law which imposes liability upon a common carrier for damages not caused by its negligence. (2) Damages may be limited by a provision that the carrier's liability shall not exceed a value stated in the document if the carrier's rates are dependent upon value and the consignor by the carrier's tariff is afforded an opportunity to declare a higher value or a value as lawfully provided in the tariff, or where no tariff is filed he is otherwise advised of such opportunity; but no such limitation is effective with respect to the carrier's liability for conversion to its own use.

Plaintiff cites two cases for the proposition that he can recover damages for emotional distress in an action arising out of the negligent breach of a contract.[3] Neither case, however, so holds. In *Kirksey v. Jernigan*, 45 So.2d 188 (S.Ct.Fla.1950), defendant funeral home took the dead body of plaintiff's child without authorization. The home then refused to return the body, embalmed it and returned it only after the payment of exorbitant fees. The Supreme Court of Florida held that those facts, if proven, could justify a recovery of damages for mental anguish as well as punitive damages. The Court stated:

> This court is committed to the rule, and we reaffirm it herein, that there can be no recovery for mental pain and anguish unconnected with physical injury in an action arising out of the negligent breach of a contract whereby simple negligence is involved. (citations omitted)

> But we do not feel constrained to extend this rule to cases founded purely in tort, where the wrongful act is such as to reasonably imply malice, or where, from the entire want of care of attention to duty, or great indifference to the persons, property, or rights of others, such malice will be imputed as would justify the assessment of exemplary or punitive damages. . . .

*Kirksey, supra*, at 189.

■ Florida recognizes the tort of intentional infliction of emotional distress both when associated with another tort and as an independent cause of action. As a general rule, however, the emotional distress must be accompanied by a physical impact or must result from a deliberate act calculated to produce such an injury. *Gilliam v. Stewart*, 291 So.2d 593 (S.Ct.Fla.1974). *Kirksey* and *City of Deland v. Florida Transportation and Leasing Corp.*, 293 So.2d 800 (1st DCA Fla.1974), the two cases cited by plaintiff, stand for the proposition that in actions founded purely in tort, where malice can be imputed from defendant's actions, there need not be physical impact or a deliberate act in order to recover for mental distress or punitive damages. Outrageous conduct will suffice. In both cases, however, the infliction of emotional distress was associated with the commission of another tort.[4] In *Kirksey*, there was tortious interference with the right to possession of the body. In *City of Deland*, a police officer misrepresented his authority. In this case, plaintiff can show no other tort.

■ Plaintiff cites F.S.A. § 677.7–309(1) for the proposition that the law imposes a duty of due care on carriers.[5] He then cites *Banfield v. Addington*, 104 Fla. 661, 140 So. 893 (1932), for the proposition that when the law imposes a duty, the failure to fulfill that duty gives rise to an action in tort. Plaintiff asserts that Greyhound's failure to exercise due care in the shipment of the package gives rise in this case to a tort outside of the contract of carriage. This Court is of the opinion that Section 677.-7–309(1) does not give rise to an independent tort action. The duty of due care grows out of the contract of carriage and breach of that duty gives rise to an action for breach of contract. An action for breach of contract cannot be converted to one in tort by alleging that it was wantonly done. *Days v. Florida East Coast Railway Co.*, 165 So.2d 434 (3rd DCA Fla.1964).[6]

■ The final question for the Court is whether Greyhound's refusal to trace the package gives rise to an independent tort of intentional infliction of emotional

---

**3.** Both *Kirksey v. Jernigan*, and *City of Deland v. Florida Transportation and Leasing Corp.* are cited in full in the text of the opinion.

**4.** See also, *Korbin v. Berlin*, 177 So.2d 551 (3rd DCA Fla.1965) involved slander and *LaPorte v. Associated Independents, Inc.*, 163 So.2d 267 (S.Ct.Fla.1964) involved malicious destruction of a dog.

**5.** See footnote number 2.

**6.** See also, *Henry Morrison Flagler Museum v. Lee*, 268 So.2d 434 (4th DCA Fla.1972).

distress. This Court holds that it does not. Plaintiff does not claim any intentional action by Greyhound towards him. Rather, he alleges a wanton disregard for his well being. The facts, however, do not show such wantonness. There was no deliberate act by Greyhound: only inaction. Greyhound was not aware of the significance of the package until after (perhaps several days after) it was lost. By this time the damage was done. While it may have been considered good business for Greyhound to trace the package, not doing so did not amount to outrageous conduct. If no special duty of care attached to the shipment prior to its loss, it would not be fair to allow one to be imposed afterwards. As a second matter, on only one occasion did plaintiff and defendant have contact with each other. Plaintiff contacted defendant's agent in Jasper sometime after the incident. At that time plaintiff requested a copy of the busbill but did not discuss the lost shipment. All other personal contact was between defendant and agents of the Department of Health. Therefore, after consideration of all the undisputed facts, this Court is of the opinion that defendant's conduct was not so outrageous as to give rise to an independent action for intentional infliction of emotional distress.

In light of the above order and opinion, the only issue remaining to be determined is defendant's liability to plaintiff for breach of the contract of carriage. As above stated, liability on this issue is limited to $50.00. At oral argument before this Court, defendant stipulated to the entry of a judgment against it in that amount. Pursuant to that stipulation, such judgment will be entered.

Therefore, it is

Ordered:

Motion for summary judgment, filed herein October 14, 1975, by defendants Greyhound Bus Lines, Incorporated, and General Fire and Casualty Company, is hereby granted.