**ARKWRIGHT–BOSTON MANUFACTURERS MUTUAL INSURANCE COMPANY, Appellant,**

v.

**GREAT WESTERN AIRLINES, INC., Appellee.**

**No. 84–2000.**

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 15, 1985.

Decided Sept. 26, 1985.

David E. Bland, Minneapolis, Minn., for appellant.

Mark L. Zaiger, Cedar Rapids, Iowa, for appellee.

Before LAY, Chief Judge, and HEANEY and FAGG, Circuit Judges.[1]

LAY, Chief Judge.

Arkwright-Boston Manufacturers Mutual Insurance Company (Arkwright), subrogee of TRW, Incorporated, brought this diversity suit against Great Western Airlines, Inc. (Great Western) seeking recovery of $99,-094 Arkwright paid TRW for damage to goods incurred in an airplane crash. The

1. Our earlier opinion dated July 3, 1985, is hereby withdrawn and vacated. The disposition is unaffected by this substituted opinion.

district court[2] granted Great Western's motion for partial summary judgment. We reverse the judgment and remand for further proceedings.

### Facts

Sometime before March 23, 1979, TRW purchased electronic goods from a dealer in Cedar Rapids, Iowa, and directed that the dealer ship the goods via Federal Express. TRW instructed the dealer not declare a value of the goods higher than the $100 minimum contained in the Federal Express airbill.[3] The dealer followed instructions, and title passed to TRW upon tender of the goods to Federal Express in Cedar Rapids. The goods were shipped under four separate Federal Express airbills, thus totalling a declared value of $400. On March 23, 1979, the Great Western owned and operated airplane carrying the TRW goods crashed on takeoff and the TRW property was destroyed. As TRW's insurer, Arkwright paid TRW $99,084 for the destroyed goods and became subrogated to any right of action TRW had against Great Western arising out of the crash.

Federal Express contracted with Great Western to transport goods from Cedar Rapids to Memphis. Arrangements such as that between Great Western and Federal Express are known as "Wet Lease Agreements." The agreement with Great Western provided that Great Western's airplanes were to be operated and maintained "for the sole and exclusive use of [Federal Express]." A Federal Express vice president stated in his affidavit that the parties intended "that Great Western * * * obtain the benefit of any provisions that would apply to Federal Express on Federal Express owned and operated aircraft." The lease agreement, however, contained no such language.

After extensive discovery, Great Western moved for summary judgment to dismiss all claims against it in excess of $400. The district court granted the motion, holding that Great Western, as a connecting carrier or agent, was entitled to benefit from the limitation of liability contained in the Federal Express airbills.

### Discussion

Arkwright argues on appeal that the district court erred in its choice and application of legal principles. Arkwright contends that federal common law determines contract carrier liability. On this basis it asserts that Great Western cannot invoke the limitation on liability contained in the Federal Express airbills because neither the Federal Express airbills nor the Wet Lease Agreement between Federal Express and Great Western expressly extends the limitation to Great Western.

In contrast, Great Western argues that the 1977 deregulation of the air cargo transportation industry signaled Congress' intent to eliminate federal control over the air cargo industry in general and air cargo liability rules in particular. Advocating affirmance of the district court's decision, Great Western contends that the Uniform Commercial Code (the UCC), see U.C.C. § 7–302 (1978),[4] applied either as state law of the forum or as federal common law, would limit Great Western's liability to the $400 limitation found in the Federal Express airbills.

---

2. The Honorable Edward J. McManus, United States District Judge for the Northern District of Iowa.

3. Paragraph seven of the Federal Express airbill provides that "[t]he liability of Federal Express is limited to the sum of $100.00 unless a higher value is declared for carriage herein and a greater charge paid * * *."

4. U.C.C. § 7–302 (1978) provides:
   **Through Bills of Lading and Similar Documents**
   (1) The issuer of a through bill of lading or other document embodying an undertaking to be performed in part by persons acting as its agents or by connecting carriers is liable to

anyone entitled to recover on the document for any breach by such other persons or by a connecting carrier of its obligation under the document but to the extent that the bill covers an undertaking to be performed overseas or in territory not contiguous to the continental United States or an undertaking including matters other than transportation this liability may be varied by agreement of the parties.

(2) Where goods covered by a through bill of lading or other document embodying an undertaking to be performed in part by persons other than the issuer are received by any such person, he is subject with respect to his own performance while the goods are in his possession to the obligation of the issuer. His obligation is dis-

■ We agree with Arkwright that federal law, rather than state law, controls the resolution of this action. The purpose of deregulation was to allow competition and the marketplace to determine rates and practices in the air transport industry. *See* 49 U.S.C. § 1302(4) (1982). Congress, however, has not relinquished complete control over air transportation. *See First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1115 (3d Cir.1984). According to § 49 U.S.C. § 1305(a)(1) (1982), no state except in circumstances not relevant here "shall enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes, or services of any air carrier * * *." Under 49 U.S.C. § 1482(d) (1982), the Civil Aeronautics Board is empowered to prescribe rates and practices after determining that an air carrier is charging unjust rates or that a rule affecting rates is unjust. Given Congress' retention of significant control over air transportation, we hold that federal common law governs Great Western's liability.

Great Western urges that, if federal law applies, case law under the Carmack Amendment to the Interstate Commerce Act (the ICA), 49 U.S.C.A. § 11707 (West Supp.1985), or the applicable provisions of the UCC should be adopted as federal common law in this case. We disagree.

In *Robert C. Herd & Co. v. Krawill Machinery Corp.*, 359 U.S. 297, 79 S.Ct. 766, 3 L.Ed.2d 820 (1959), the Supreme Court discussed the common law liability of a carrier's agent for damage to goods caused by the agent's negligence. In particular, the Supreme Court considered whether provisions of the Carriage of Goods by Sea Act, *see* 46 U.S.C. § 1304(5) (1982), or the parallel liability limiting provisions of an ocean bill of lading limited the common law liability of a negligent stevedore employed by the carrier to load cargo on the carrier's vessel. The Court decided that neither the statute nor the bill of lading limited the defendant stevedore's liability. The Court then examined a Fifth Circuit [5] decision holding that agents of carriers were protected by the liability provisions of the carrier's contract even though the agents were not express beneficiaries or parties to the agreement. The Supreme Court rejected the Fifth Circuit's reasoning, stating:

> From its early history this Court has consistently held that an agent is liable for all damages caused by his negligence, unless exonerated therefrom, in whole or in part, by a statute or a valid contract binding on the person damaged. * * *
>
> * * *
>
> * * * [C]ontracts purporting to grant * * * limitation of[ ] liability must be strictly construed and limited to intended beneficiaries, for they "are not to be applied to alter familiar rules visiting liability upon a tortfeasor for the consequences of his negligence, unless the clarity of the language used expresses such to be the understanding of the contracting parties."

*Robert C. Herd & Co.*, 359 U.S. at 303, 305, 79 S.Ct. at 770, 771 (citations omitted). Because neither statute nor contract limited the stevedore's common law liability, the Court held the negligent stevedore was liable for the full value of the damaged goods.

■ Great Western argues that *Robert C. Herd & Co.* is inapplicable because it deals with the Carriage of Goods by Sea Act and international sea travel. Great

charged by delivery of the goods to another such person pursuant to the document, and does not include liability for breach by any other such persons or by the issuer.

(3) The issuer of such through bill of lading or other document shall be entitled to recover from the connecting carrier or such other person in possession of the goods when the breach of the obligation under the document occurred, the amount it may be required to pay to anyone entitled to recover on the document therefor, as may be evidenced by any receipt, judgment, or transcript thereof, and the amount of any expense reasonably incurred by it in defending any action brought by anyone entitled to recover on the document therefor.

5. *See A.M. Collins & Co. v. Panama R. Co.*, 197 F.2d 893 (5th Cir.), *cert. denied*, 344 U.S. 875, 73 S.Ct. 168, 97 L.Ed. 677 (1952).

Western asserts instead that the Interstate Commerce Act, including the liability limitation found in the Carmack Amendment, 49 U.S.C.A. § 11707 (West.Supp.1985), is a more appropriate analogy. The Carmack Amendment, however, was not applicable to air carriers before deregulation, *American Airlines, Inc. v. Miller*, 356 S.W.2d 771, 773 (Tex.1962), and we agree with Arkwright that the Carmack Amendment did not become applicable to air carriers after deregulation. The district court thus erred in relying on cases limiting liability of contracting carriers under the ICA.

■ Nor does the UCC provide the federal rule of decision in this case, as Great Western urges. Although the UCC was designed for intrastate transactions, this circuit has stated that the UCC can provide a source of federal common law. *See United States v. Conrad Publishing*, 509 F.2d 949, 953 (8th Cir.1978); *see also In re King-Porter Co.*, 446 F.2d 722, 732 (5th Cir. 1971). *Conrad Publishing* does not direct us to look to the UCC, however, when a body of federal common law exists and predates the adoption of the UCC. Furthermore, as Great Western concedes, U.C.C. § 7–302, which Great Western urges us to adopt as federal common law, embodies the liability limitation found in the ICA Carmack Amendment. Having determined that the Carmack Amendment does not supply the appropriate rule of decision, we deem it would be inconsistent for a federal court to adopt U.C.C. § 7–302, a state codification of the Carmack Amendment, as federal common law.

Congress was presumably aware of the differences between the statutory liability of carriers' agents under the Carmack Amendment and the UCC, and the federal common law liability of carriers' agents as interpreted by the Supreme Court in *Robert C. Herd*. In its recent and thorough review of federal legislation in the air transportation industry, however, Congress did not enact legislation providing carriers' agents with the same protections as carriers' agents enjoy under the ICA and state law. We can only assume that Congress intended this result and we therefore decline under the circumstances presented here to adopt the ICA or the UCC as controlling.

**Conclusion**

■ *Robert C. Herd & Co.* provides that, notwithstanding a provision limiting a carrier's liability, the carrier's agent is liable under federal common law for the full value of goods damaged by the agent's negligence unless statute or contract expressly extends the limitation on liability to the agent. Following this principle, Great Western cannot benefit from the limitation on liability contained in the Federal Express airbills because neither the contract between Federal Express and Great Western nor the Federal Express airbills expressly extend Federal Express' liability limitation to Great Western. We therefore see no reason why Arkwright cannot recover its actual damages against Great Western of Great Western is found to have been negligent in the transport of the TRW goods.[6]

The district court erred in granting summary judgment against Arkwright. We reverse and remand for full trial on the merits.

---

**6.** A stipulation of the parties filed June 29, 1984, in the district court reads:

IT IS HEREBY STIPULATED AND AGREED by the parties, through their counsel of record, as follows:

Defendant Great Western Airlines admits liability to Plaintiff Arkwright-Boston Manufacturers Mutual Insurance Company for the amounts required to be paid by Arkwright-Boston to TRW under a policy of insurance as a result of the crash of Great Western Airlines plane 201GW on March 23, 1979. Said damages exceed the amount of $400.00, but do not exceed the amount of $99,084.00. In the event quantum of damages is litigated following appeal, the parties shall not be precluded from litigating the question of whether such payments were required under a policy of insurance or were volunteer payments.

This stipulation may obviate the need for findings on remand.