Carl Gerome HAMPTON, by his next friend, Carl Jerry HAMPTON, and Carl Jerry Hampton, Appellants,

v.

FEDERAL EXPRESS CORPORATION, Appellee.

No. 89–2369.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1990.

Decided Oct. 29, 1990.

**1120**

Jerold L. Drake, Grant City, Mo., for appellant.

William L. Rahner, Memphis, Tenn., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and RE, Chief Judge.[*]

RE, Chief Judge.

In this diversity action, plaintiffs-appellants, Carl Jerry Hampton, individually and on behalf of his deceased son, Carl Gerome Hampton (collectively, Hampton), Missouri residents, sued defendant-appellee, Federal Express Corporation, a Delaware corporation, in the United States District Court for the Western District of Missouri, seeking a total of $3,081,000, for personal injury, wrongful death, and loss of services.

Hampton alleged that Federal Express, a common carrier, negligently failed to deliver blood samples of Carl Gerome Hampton, a cancer patient in need of a bone marrow transplant, that had to be matched with a potential bone marrow donor. Hampton appeals from judgment of the district court which granted the partial summary judgment motion of the carrier, Federal Express, limiting Hampton's recovery to $100 in damages.

The question presented is whether the district court erred in determining that the carrier, Federal Express, is entitled to partial summary judgment under the released value doctrine, limiting its liability to $100, the amount stated in the contract of carriage between it and the shipper.

Since, on the facts presented, the nature and extent of damages suffered by plaintiff Hampton were not reasonably foreseeable to the carrier, Federal Express, we affirm the judgment of the district court granting Federal Express' motion for partial summary judgment.

## I. BACKGROUND

In March, 1988, Carl Gerome Hampton, a 13–year old cancer patient at Children's Memorial Hospital in Omaha, Nebraska, was awaiting a bone marrow transplant. A transplant operation was scheduled at the University of Iowa Hospital in Iowa City, Iowa, where five potential bone marrow donors had been found.

On March 21, 1988, in order to match Carl with the most suitable donor, five samples of Carl's blood were sent by the shipper, the Children's Memorial Hospital in Omaha, to Dr. Nancy Goeken, at the Veterans Administration Medical Center in Iowa City. The shipper, the Children's Me-

* The HONORABLE EDWARD D. RE, Chief Judge of the United States Court of International Trade, sitting by designation.

morial Hospital, entered into a contract with the carrier, Federal Express, for the transport of the blood samples.

In a paragraph entitled "Damages or Loss," the contract of carriage, set forth in the airbill, stated:

> We are liable for no more than $100 per package in the event of physical loss or damage, unless you fill in a higher **Declared Value** to the left and document higher actual loss in the event of a claim. We charge 30¢ for each additional $100 of declared value up to the maximum shown in our Service Guide.

The reverse side of the airbill contains several paragraphs, entitled "Limitations On Our Liability," which state that:

> Our liability for loss or damage to your package is limited to your actual damages or $100, whichever is less, unless you pay for and declare a higher authorized value. We do not provide cargo liability insurance, but you may pay thirty cents for each additional $100 of declared value. If you declare a higher value and pay the additional charge, our liability will be the lesser of your declared value or the actual value of your package.

It is not disputed that the blood samples were never received by Dr. Goeken, that Carl Hampton, the infant cancer patient, never obtained a bone marrow transplant, and that he died on May 19, 1988.

Alleging causes of action for personal injury, wrongful death, and loss of services, Carl Jerry Hampton, individually and on behalf of his deceased son, Carl Gerome Hampton, filed suit in the United States District Court for the Western District of Missouri, seeking $3,081,000 in damages. On the basis of the released value doctrine, the district court granted Federal Express' motion for partial summary judgment, and entered judgment in favor of Hampton for $100.

## II. DISCUSSION

### A. The "Released Value Doctrine"

■ We have held that, under federal common law, "[a] common carrier may not exempt itself from liability for its negligence; however, a carrier may limit its liability." *Hopper Furs, Inc. v. Emery Air Freight Corp.*, 749 F.2d 1261, 1264 (8th Cir.1984). As stated by the Supreme Court in the leading case of *Hart v. Pennsylvania R.R.*, 112 U.S. 331, 343, 5 S.Ct. 151, 157, 28 L.Ed. 717 (1884):

> where a contract * * * signed by the shipper, is fairly made, agreeing on the valuation of the property carried, with the rate of freight based on the condition that the carrier assumes liability only to the extent of the agreed valuation, even in case of loss or damage by the negligence of the carrier, the contract will be upheld as a proper and lawful mode of securing a due proportion between the amount for which the carrier may be responsible and the freight he receives, and of protecting himself against extravagant and fanciful valuations.

*See generally First Pa. Bank, N.A. v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1115–16 (3d Cir.1984). This body of law, which has come to be known as the "released value doctrine" of federal common law, requires that in order to limit its liability "the carrier must present the shipper with a reasonable opportunity to declare a value for the shipment above the maximum value set by the carrier, pay an additional fee, and thereby be insured at a higher rate should the shipment go awry." *Husman Constr. Co. v. Purolator Courier Corp.*, 832 F.2d 459, 461 (8th Cir.1987).

■ In this case, the contract entered into by the shipper, the Children's Memorial Hospital, with the carrier, Federal Express, clearly limited the liability of the carrier to $100, and provided the shipper with an opportunity to declare a higher value. Furthermore, it is not disputed that the shipper never declared a higher value for the blood samples. Hence, should the released value doctrine apply, the liability of the carrier, Federal Express, would be limited to $100.

There is a question, however, as to whether the released value doctrine applies in a suit brought by a plaintiff not a party to the contract of carriage. Hampton con-

tends that his damages should not be limited by the released value doctrine since he was not the shipper of the blood samples, and, therefore, was not a party to the contract with the carrier, Federal Express. In support of his contention, Hampton cites the decision of this court in *Arkwright–Boston Mfrs. Mut. Ins. Co. v. Great Western Airlines, Inc.*, 767 F.2d 425 (8th Cir. 1985). It is clear, however, that *Arkwright* is distinguishable from the present case.

In *Arkwright*, TRW purchased electronic goods from a dealer in Cedar Rapids, Iowa. Pursuant to TRW's specific instructions, the goods were shipped from the dealer, to TRW, in four packages by the carrier, Federal Express. Upon tender of the goods to Federal Express, title passed from the dealer to TRW. The airbills with Federal Express contained a clause limiting Federal Express' liability to $100 per package, in the absence of a greater declared value. As in this case, the airbills did not declare a value greater than $100 for each package. *See id.* at 426.

In *Arkwright*, Federal Express entered into a subcontract, for the delivery of the packages, with the defendant, Great Western. Subsequently, the goods were destroyed in transit in the crash of the defendant's airplane. *See id.* The plaintiff, Arkwright, TRW's insurer and the subrogee of TRW's rights against the defendant, then sued the defendant for $99,000, the amount the plaintiff paid to TRW for the goods destroyed in the crash. *See id.* at 425. Although the opinion does not indicate whether the plaintiff proceeded under a tort or contract theory, the district court granted summary judgment for the defendant, and limited its liability for each package to $100, the limitation on liability contained in the airbills. *See id.* at 426.

On appeal, we reversed and remanded for a trial. Since the airbill did not expressly extend the liability limitation to a subcontractor of the carrier, such as the defendant, we held that, under federal common law, the defendant could not benefit from the limitation on liability contained in the airbill, which stated the contract between the parties. *See id.* at 428. In

effect, the contract limitation did not inure to the benefit of the subcontractor, who also was not relieved of its liability in tort.

This case, however, differs from *Arkwright* since Hampton is suing the carrier, Federal Express, rather than a defendant who is not a party to the contract of carriage. In addition, in this case, unlike *Arkwright*, the contract between the shipper, the Children's Memorial Hospital, and the carrier, Federal Express, expressly limited the liability of the defendant, Federal Express, to $100. Hence, *Arkwright* does not support Hampton's assertion that the released value doctrine does not apply to this case.

In further support of his contention that the released value doctrine should not apply, Hampton cites two district court cases. In the first, a carrier was held liable to the consignee of the shipped goods, after the consignee brought an action for breach of contract. In the second, a carrier was held liable in tort to a plaintiff not a party to the contract of carriage. Neither case, however, is persuasive, since they are both factually distinguishable.

In the first case, *New Dawn Natural Foods, Inc. v. Natural Nectar Corp.*, 655 F.Supp. 475 (E.D.Mo.1987), the plaintiff, the consignee of a shipment of ice cream, sued the defendants, including a carrier, on a breach of contract claim for damages caused by late delivery. The defendant carrier moved to dismiss for failure to state a claim for relief. The carrier contended that the plaintiff consignee was not a party to the contract between the carrier and its subcontractor and, hence, could not maintain an action on that contract. The court applied Missouri law, and concluded that "a consignee not in privity with a carrier has a cause of action against the carrier for damages arising out of the carrier's negligent performance of the contract to deliver." *Id.* at 476. Accordingly, the court denied the defendant carrier's motion to dismiss. In this case, however, unlike in *New Dawn*, the plaintiff is not the consignee of the shipment.

In the second case cited by Hampton, *Reece v. Delta Air Lines, Inc.*, 686 F.Supp.

21 (D.Me.1988), the plaintiffs, the widow and two sisters of the decedent, sought damages for emotional distress caused by the defendant carrier's negligence in mishandling the remains of the plaintiffs' decedent, which were shipped in a coffin. The carrier moved for dismissal on the grounds that the waybill, which contained the contract entered into by the defendant carrier and the shipper, a funeral home, limited the total damages recoverable to fifty cents per pound. *See id.* at 22. The court concluded that "the contractual language cannot limit [the defendant carrier]'s liability for any tort *which is independent of the shipping contract.*" *Id.* (emphasis in original). From the nature of the shipment in *Reece,* however, it is clear that the carrier in that case knew the contents of the coffin, and could foresee that the mishandling of the coffin would cause injuries of the type or nature suffered by the plaintiffs. Hence, in *Reece,* in contrast to this case, the damages suffered by the plaintiffs were reasonably foreseeable. *Cf. Johnson v. State,* 37 N.Y.2d 378, 383, 334 N.E.2d 590, 593, 372 N.Y.S.2d 638, 642 (1975) (A defendant is liable under "special circumstances," such as the negligent transmission of message of death and negligent mishandling of a corpse, because the injury suffered is "within the 'orbit of danger' and therefore within the 'orbit of the duty' for the breach of which a wrongdoer may be held liable." (citing *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 343, 162 N.E. 99, 100 (1928)).

In a case factually similar to *Reece,* however, another district court granted a defendant carrier's motion to dismiss. In *Neal v. Republic Airlines, Inc.,* 605 F.Supp. 1145 (N.D.Ill.1985), the plaintiffs, the children and heirs at law of the decedent, sued the defendant carrier for damages caused by the carrier's negligence in misdelivering the remains of the plaintiffs' decedent. In granting the defendant's motion, the court stated that "[w]here * * * it is clear plaintiffs seek damages for breach of the carriage contract with [the defendant carrier], they may not avoid that contract's liability limits by framing their complaint in terms of bailment and tort." *Id.*

at 1148. Stating that the plaintiffs "must proceed, if at all, on a breach of contract theory," *id.,* the court concluded that since the plaintiffs were not parties to the contract of carriage, they could not sue the carrier. *See id.* at 1150.

Apart from the district court cases discussed, Hampton has failed to cite any authority in support of his position that the released value doctrine does not apply. Even if the released value doctrine does not apply, in this case, Hampton still cannot prevail under general principles of the common law.

## B. *Recovery in Contract*

█ The arguments raised present important questions in contrasting a recovery based on contract or tort. English legal history shows that classifications and concepts that today seem absolutely distinct, were once blended and spring from a common source. Tort and contract law is an example, since the law of contracts began with the common law action of assumpsit, which traces its origins to the law of tort. *See* 3 W. Holdsworth, *A History of English Law* 428–29 (3d ed.1923). Furthermore, in modern times, the difference between tort and contract liability "has become an increasingly difficult distinction to make." W. Keeton, *Prosser and Keeton on the Law of Torts* § 92 (5th ed.1984) (hereinafter *Prosser*). Although it may be true that "general propositions do not decide concrete cases," *Lochner v. New York,* 198 U.S. 45, 76, 25 S.Ct. 539, 547, 49 L.Ed. 937 (1905) (Holmes, J., dissenting), it is basic that, in contract law, the defendant's liability to a plaintiff arises from the contractual agreement between the parties. Tort liability, however, arises from "general obligations that are imposed by law—apart from and independent of promises made and therefore apart from the manifested intention of the parties—to avoid injury to others." *Prosser* at § 92.

In this case, even if it were to be assumed that Hampton may sue as a third party beneficiary of the contract between the shipper and the carrier, on the facts presented he still cannot recover in con-

tract. *See Osmond State Bank v. Uecker Grain, Inc.,* 227 Neb. 636, 639, 419 N.W.2d 518, 520 (1988) (under Nebraska law, the rights of a third party beneficiary depend on the liability of the promisor contained in the contract); *Bridgman v. Curry,* 398 N.W.2d 167, 170 (Iowa 1986) (under Iowa law, third party beneficiary must show that contract was formed for his express benefit). *See also* Restatement (Second) of Contracts § 302 (1981).

It is a fundamental principle of the law of damages that, in contract cases, a plaintiff can only recover for a loss which, in the ordinary course of events, would result from the defendant's breach or for a loss which was in the contemplation of the parties. In the words of the Restatement, "[d]amages are not recoverable for loss that the party in breach did not have reason to foresee as a probable result of the breach when the contract was made." Restatement (Second) of Contracts § 351(1) (1981). This rule of damages may be traced to *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854), in which:

> the plaintiffs, who were owners of a steam mill, delivered to defendant, a carrier, a broken shaft essential to the function of the mill. The defendant agreed to transport the shaft to an engineer who would make a new shaft using the former as a model. The defendant delayed and plaintiffs brought action for special damages equal to the loss of profits resulting from the idle steam mill. Since the defendant was not made aware that delay in carriage of the indispensable part would result in an idle mill and loss of profits, plaintiffs could not recover.

E. Re, *Cases and Materials on Remedies* 758 (2d ed.1987). *See also Victoria Laundry (Windsor) Ld. v. Newman Indus.,* 2 K.B. 528, 539 (1949) ("In cases of breach of contract the aggrieved party is only entitled to recover such part of the loss actually resulting as was at the time of the contract reasonably foreseeable as liable to result from the breach."). Hampton, in this case, cannot dispute that Federal Express had no knowledge of Hampton or of the contents of the package that it accepted for delivery. Hence, even apart from the limitation of liability provision, since the damages suffered by Hampton were not reasonably foreseeable, they would not be recoverable in a breach of contract action.

## C. Recovery in Tort

■ The tort law of negligence, however, does not provide as clear a rule as to whether a defendant may be held liable for injuries or damages that are not reasonably foreseeable. Indeed, the wealth of literature on the subject is illustrative of the differences of opinion on the subject. Tort scholars state that, on the question of the recovery of damages that are not reasonably foreseeable, "there are two basic, fundamental, opposing and irreconcilable views, which have been in conflict for more than a century * * *." *Prosser* at § 43. Under the first theory, a defendant is liable only for damages that are the natural and probable consequences of the negligent act. *See, e.g., Milwaukee and St. P. Ry. v. Kellogg,* 94 U.S. 469, 476, 24 L.Ed. 256 (1876). Under the second theory, the defendant may be liable to a plaintiff for all resulting damages, but only if the defendant owes a duty to the plaintiff. *See Prosser* at § 43. The seminal case under this second theory is *Palsgraf v. Long Island R.R.,* 248 N.Y. 339, 162 N.E. 99 (1928).

In *Palsgraf,* a passenger was running to board one of the defendant's trains. An employee of the defendant, in assisting the passenger to board the train, caused a package being held by the passenger to fall. The package, unknown to the employee, contained fireworks which exploded. The resulting concussion (or "stampede of frightened passengers") caused some scales on the platform, a considerable distance away, to fall on the plaintiff and injure her. *See Palsgraf,* 248 N.Y. at 340–41, 162 N.E. at 99; *Prosser* at § 43 n. 35.

In denying the plaintiff recovery, Justice Cardozo, then a judge of the Court of Appeals of the State of New York, stated that the package itself did not provide notice that, if it fell, it could cause injuries to persons at the other end of the platform.

*See id.* at 341, 162 N.E. at 99. The court noted that "[t]he conduct of the defendant's guard, if a wrong in its relation to the holder of the package, was not a wrong in its relation to the plaintiff, standing far away[,]" and concluded that "[n]egligence is not actionable unless it involves the invasion of a legally protected interest, the violation of a right." *Id.* Hence, the court held that the defendant was not liable to the plaintiff since the defendant, under the circumstances, could not reasonably foresee any injury to the plaintiff.

Under *Palsgraf,* it is only when the defendant owes a duty to the plaintiff that the defendant is liable for all damages, whether or not reasonably foreseeable, caused by the defendant's negligent act. Notwithstanding the variety of views that have emerged from *Palsgraf* and related cases, the Restatement has adopted the *Palsgraf* approach. *See* Restatement (Second) of Torts § 281 comment c, illustration 1 (1965). *See also Prosser* at § 43; *Pizarro v. Hoteles Concorde Int'l, C.A.,* 907 F.2d 1256, 1259–60 (1st Cir.1990) (" '[T]he touchstone is foreseeability: [conduct results in] liability if, and to the extent that, a foreseeable risk of harm materializes.' " (quoting *Peckham v. Continental Casualty Ins. Co.,* 895 F.2d 830, 836 (1st Cir. 1990))).

Clearly, Federal Express had no knowledge of Hampton, and did not know that the package contained blood samples. It is equally clear that the shipper, Children's Memorial Hospital, did not declare a value higher than $100 for the package. Under these circumstances, Federal Express could not reasonably foresee any injury to Hampton, or the nature and extent of the injury. In accordance with the reasoning in *Palsgraf,* since there was no duty, there could be no recovery for negligence, and therefore the defendant, Federal Express, could not be held liable to the unforeseeable plaintiff, Hampton. Indeed, under any of the general principles and theories of the common law that have been considered and applied, it would seem clear that Hampton has no cause of action.

Finally, we note that the case at bar is analogous to a case decided in the United States District Court for the Middle District of Florida, *Gibson v. Greyhound Bus Lines, Inc.,* 409 F.Supp. 321 (M.D.Fla.), *aff'd mem.,* 539 F.2d 708 (5th Cir.1976). In *Gibson,* the plaintiff, a Florida wildlife officer, suffered injuries on duty when he was scratched by a racoon. In order to determine whether the plaintiff had been exposed to rabies, the racoon's head was shipped by the Hamilton County Department of Health to a Florida state laboratory in Jacksonville, Florida. The shipper, the Department of Health, entered into a contract of carriage with the defendant carrier. The defendant was given no special instructions on the handling of the package, which contained the racoon's head, and the shipper did not obtain insurance. *See* 409 F.Supp. at 322. The racoon's head was never delivered, and, as a result, the plaintiff received a precautionary series of rabies vaccinations. Because of an adverse reaction to the vaccinations the plaintiff suffered injuries, and sued for damages. *See id.* at 323.

In moving for summary judgment, the defendant contended that, as a carrier, it was subject to Florida state regulations which, in the absence of a declaration of greater value, limited its liability to $50 for a shipment of less than 100 pounds. *See id.* at 323. It is noteworthy that the district court stated that "[t]he special importance of the shipment was not known to defendant." *Id.* at 324. As a consequence, the court concluded that the "[d]efendant assumed no special duty towards the goods[,] [and] * * * is, therefore, entitled to the limitation of liability." *Id.* Hence, the court granted the defendant's motion for summary judgment, and entered judgment for $50 in favor of the plaintiff.

Under the circumstances of this case, involving a contract of carriage, it would also seem unreasonable and unjust to hold Federal Express liable to Hampton. If Federal Express had known of the contents of the package, it might have charged a higher rate, exercised additional care, have obtained insurance, or might not have accepted the responsibility. Since Federal

Express had no knowledge of the contents, and hence could not reasonably foresee the injury and damages that could be suffered, plaintiff Hampton cannot recover on its cause of action founded in tort.

### III. CONCLUSION

Since we hold that there was no duty owed to Hampton, and that the injury and damages suffered were not reasonably foreseeable, Hampton is not entitled to recover. Federal Express, however, does not appeal from the district court's award of $100 in damages to Hampton, on partial summary judgment. Hence, Federal Express' liability is limited to $100, the amount declared in the airbill. Accordingly, the order of the district court is affirmed.