**AMERIKA SAMOA BANK, and NATIONAL PACIFIC INSURANCE CO., Plaintiffs,**

**v.**

**UNITED PARCEL SERVICE, Defendant.**

High Court of American Samoa
Trial Division

CA No. 42-93

March 18, 1994

Before RICHMOND, Associate Justice, VAIVAO, Associate Judge, LOGOAI, Associate Judge.

Counsel:      For Plaintiffs, William H. Reardon
              For Defendant, Roy J.D. Hall, Jr.

Order Granting Motion for Summary Judgment:

The motion by defendant United Parcel Service ("UPS") for summary judgment came regularly for hearing on February 28, 1994.

The essential facts of this case are not disputed. On March 13, 1990, UPS picked up a package from plaintiff Amerika Samoa Bank ("ASB") destined for the First Hawaiian Bank in Honolulu, Hawaii. Unknown to

UPS, the package contained a cash letter containing negotiated checks worth, at least to ASB, $417,313.05. This was, approximately, the nineteenth such package sent by ASB via UPS. When the package was picked up from ASB, UPS's local agent Don Fuimaono prepared waybill #819 084--and this waybill was appropriately signed by an ASB employee. The waybill indicates that the package was a "document only" with no declared value. Because there was no value assigned to the package ASB was charged $25.00 for shipping. The waybill also states that, unless a greater value is declared by the shipper, the released value of the shipment is $100.00.

Previously, there had been two separate meetings between UPS and ASB employees to discuss UPS's available services. UPS has alleged, without contradiction, that release value limitations and available insurance were among the topics discussed. In fact, ASB had purchased insurance from plaintiff National Pacific Insurance Co. ("NPI") to protect against the loss or damage to packages sent via express courier.

While there remains some question as to what ultimately became of the package, both parties agree that it did not arrive at its intended destination. Once that determination was made there was a meeting between Hal Fielding, ASB's president, and Don Fuimaono on April 25, 1990, to discuss the disappearance of the package. While ASB was eventually able to reconstruct and account for $394,715.13 of the loss, there remained an outstanding loss of $22,597.92. NPI settled ASB's claim in the amount of $7,597.92 (the claim less a $15,00.00 policy deductible). A claim for this amount was then made to UPS, who responded by sending NPI a check in the amount of $100.00--the released value of the shipment. ASB and NPI now seek full reimbursement for the $22,597.92 loss and allege breach of contract, negligence, misrepresentation and tortious breach of contract. UPS has responded with the motion currently at issue.

There is also very little disagreement between the parties as to the law regarding this dispute. UPS, in a well-prepared brief, has carefully laid out the law that controls, and ASB and NPI have acquiesced to UPS' view of the law. We briefly recite the applicable law.

■ At federal common law, carriers may partially limit their liability pursuant to the "released valuation" doctrine, whereby the shipper does not declare a value and the released value (here $100.00) is presumed. *First Pennsylvania Bank v. Eastern Airlines*, 731 F.2d 1113 (3rd Cir. 1984). While there are several instances in which a released valuation

160

would not apply (i.e., where there is no opportunity to choose between higher and lower liability coverage or where the shipper does not have reasonable notice of such an opportunity), neither party has asserted that there was any difficulty in this area. Neither ASB nor NPI has disagreed with UPS's assertions that the limitation of liability on the waybill was adequate and reasonably communicative. This aspect of the governing law is not in dispute.

There is, in fact, only one point of contention between the parties. While ASB and NPI agree with UPS on the facts and law thus stated, they argue that UPS is not protected under the released value doctrine if the package was appropriated by a UPS employee and UPS failed to cooperate in recovering the latter. Unfortunately for ASB and NPI, the case law is overwhelmingly to the contrary.

■ In ruling on a summary judgment motion, the court must view all pleadings and supporting papers in the light most favorable to the opposing party, *United States v. Diebold*, 369 U.S. 654 (1962), treat the opposing party's evidence as true, and draw from such evidence the inferences most favorable to him. *Lokan v. Lokan*, 6 A.S.R.2d 44,45 (1987). Therefore, for the purposes of this motion, we will assume that the package was in fact appropriated improperly by a UPS employee, and that UPS was uncooperative in recovery efforts. However, even these assumptions cannot rescue the case for ASB and NPI.

■ Fatal to the argument by ASB and NPI is their lack of distinguishing between appropriation by *UPS itself* and an *employee* of UPS. When a package is taken by, or for, the carrier, the shipper may not be contractually bound under the released value doctrine. However, this is not the case when an employee of the carrier appropriates a package for him or herself. In *Tishman and Lipp, Inc. v. Delta Airlines*, 275 F. Supp. 471 (S.D.N.Y. 1967), *aff'd* 413 F.2d 1401 (2nd Cir. 1969), the court granted the plaintiff only the minimum liability of $50.00 when jewelry (in a sample case) was lost when checked as air freight baggage and its contents were not known to the defendant, nor was any value declared (in violation of air freight tariffs against jewelry as air freight baggage). The plaintiff alleged that if the defendant or its employees were guilty of gross negligence or conversion, the defendant could not take advantage of tariff provisions. In responding, the court, citing *Glickfield v. Howard Van Lines*, 213 F.2d 713 (9th Cir. 1954), said:

> The litigants agree that if the property has been converted by the carrier, it would be against public

161

policy to permit the carrier to limit its liability and thus to profit from its own misconduct. However, the cases are uniform in holding that the conversion doctrine is pertinent only when there has been a true conversion, i.e., where the carrier has appropriated the property for its own use or gain. The carrier may properly limit its liability where the conversion is by third parties or even by its own employees. In the latter circumstance, where the carrier may have been guilty of negligence in the selection of its employees, it has not been unjustly enriched, nor has it been guilty of any misconduct.

In *Rafaella Gallery v. UPS*, 818 F. Supp. 53 (S.D.N.Y. 1993), a case with obvious similarities to the one now before us, UPS was to deliver two tapestries with a combined worth of $52,000.00 to plaintiff. Deviating from standard UPS procedure, the driver left the packages in the building's vestibule and signed the delivery receipt himself with a fictitious name. The plaintiff had not declared the value and UPS contended it was limited to the presumed declared value of $100.00 per package. Referencing the Carmack Amendment to the Interstate Commerce Act, the court was unpersuaded that the misdelivery negated the contract, stating that this was not a case where the carrier *itself* misappropriated the goods.

In *Nippon Fire and Marine Ins. v. Holmes Transp.*, 616 F. Supp. 610,611 (D.C.N.Y. 1985), a case based on the Interstate Commerce Act, the plaintiff (as a subrogee) filed an action seeking to find a limitation of liability ineffective when one of six cases of data processing equipment failed to arrive at its destination. Noting that the shipper had not stated that the value of the case was in excess of that on the shipping order, the court stated: "There is no proof of an actual conversion of the carton by either defendant for its own use. Absent affirmative proof of such conversion, the rule of law is that plaintiff's recovery is limited to the agreed release value of the carton . . . . As this court held . . . in order to recover against a carrier, the plaintiff must present '*evidence of conversion by the defendant itself for its own use.*'" (emphasis added).

In *Maraohn v. Burnham Van Lines*, 478 F. Supp. 49, 52 (N.D. Ill. 1979), a serviceman, whose goods were destroyed in transit, sued the shipper. In granting summary judgment for the defendant, the court said the limitation of liability was binding as, among other things, this was not a case "where the carrier has purposely converted the entrusted property

162

for its own use or gain, in which case public policy would not permit the carrier to limit its liability and thus profit from its own misconduct". The cases so holding are numerous. *See also Deiro v. American Airlines,* 816 F.2d 1360, 1366 (9th Cir. 1987) ("Under the federal common law, only an appropriation of property by the carrier for its own use will vitiate limits on liability."); *Glickfield v. Howard Van Lines*, 213 F.2d 723 (9th Cir. 1954) (affirming limitation of liability on goods lost on interstate carrier); *Neal v. Republic Airlines, Inc.*, 605 F. Supp. 1145 (N.D. Ill. 1985).

There has been no contention by ASB and NPI that UPS in any way appropriated the package in question for its own use. Thus, even assuming the truth of the assertion by ASB and NPI that the package was stolen by a UPS employee, ASB and NPI remain bound by the released value doctrine. Whether or not UPS made a poor selection of its employees, or gave them sufficient instructions to satisfy ASB and NPI, is immaterial. ASB was charged a low rate for delivery because the package had no declared value, a choice that in hindsight was not wise. However, ASB and NPI have not forwarded a theory which would shift the liability of this decision on to UPS.

■ Also without merit is the contention by ASB and NPI that UPS's failure to assist them in recovery releases them from the contract. While it may be poor business practice not to aid customers in locating missing packages, it is not the kind of behavior that voids a contract.

In *Gibson v. Greyhound Bus Lines, Incorporated*, 409 F. Supp. 321 (M.D. Fla. 1976), *aff'd* 539 F.2d 708 (3rd Cir. 1976), the court granted a summary judgment motion where a raccoon head, having no intrinsic value except to the plaintiff, was carried by the defendant but never reached its destination. The court found that even if the defendant was liable, it was entitled to the limitation of liability, and that the defendant assumed no special duty towards the goods. The limitation of liability was not applicable only when the carrier was not liable. Even Greyhound's refusal to trace the package was found not actionable, as this was inaction, but not a deliberate act. And in *Nippon Fire*, 616 F. Supp. at 612, the court, under federal law, rejected the plaintiff's claim that the defendants had an obligation to establish what happened to a missing carton.

Therefore, even assuming the truth of all the assertions by ASB and NPI, they have presented nothing entitling them to a trial on the merits. The motion for summary judgment is therefore granted.

It is so ordered.