**CAPORICCI FOOTWEAR,
LTD., Plaintiff,**

v.

**ROADWAY PACKAGE SYSTEMS,
INC., Defendant.**

Civ. A. No. 94–1082–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

Feb. 15, 1995.

As Amended Aug. 8, 1995.

Valerie Perrin Morrison, Gold & Stanley, Alexandria, VA, Kenneth R. Weiner, Weiner, Weiner & Weiner, Fairfax, VA, and Thomas

B. Morrison, Morrison & Murray, Rockville, MD, for plaintiff.

Kenneth S. Nankin, Zuckert, Scoutt, & Rassenberger, Washington, DC, for defendant.

## MEMORANDUM OPINION

HILTON, District Judge.

This matter came before the Court on defendant's motion for summary judgment and defendant's motion for leave to amend its complaint to assert a counterclaim. Defendant Roadway Package System, Inc. ("RPS") is an Interstate Commerce Commission ("ICC") certificated common carrier of small packages. On February 28, 1994, the plaintiff, Caporicci Footwear, entered into a service agreement whereby RPS agreed to provide small package interstate transportation services to Caporicci. In or about late March or early April, RPS's Alexandria, Virginia terminal received a notice from an employee of Caporicci that Caporicci intended to ship a quantity of leather shoes to a consignee named United Shoe Distributors in Miami, Florida. Pursuant to the RPS Pick–Up Record, dated April 1 and 2, 1994, RPS picked up 87 packages from Caporicci's facility in Fairfax, Virginia for transportation to United Shoe Distributors. The RPS Pick–Up Record designated United Shoe Distributors as the consignee and 4995 N.W. 79th Avenue, Miami, Florida as the address to which the goods were to be delivered. No particular person was specified on the Pick–Up Record. Caporicci also listed on the Pick–Up Record COD amounts for each of the 87 packages totalling $136,337.07 which was to be collected by RPS upon delivery to the consignee.

On April 5, 1994, an RPS Account Representative sent an electronic mail memorandum to RPS's Miami terminal advising of Caporicci's instructions for delivery of the goods to United Shoe Distributors. Pursuant to the instructions in the memorandum, the Delivery Manager, Dan Sherman, telephoned the number listed in the memorandum for United Shoe Distributors and spoke to an individual named "Barney." Barney confirmed the address to which the packages were to be delivered and confirmed that he

would tender to the RPS courier a cashier's check from United Shoe Distributors payable to Caporicci in the amount of $136,337.07. Barney did not request that the driver release the goods to any specific person at that location.

On April 7, 1994, an RPS courier drove a tractor trailer containing the 87 packages to 4995 N.W. 79th Avenue in Miami for delivery of the goods. When the driver arrived at the address, which was a self storage facility, he saw an office next to a closed gate controlling access to the facility and went inside the office. The courier asked a woman identifying herself as the manager of the self-storage facility where International Shoe Distributors was located. The woman instructed the courier to drive through the gate and proceed to a row of about 20 storage units where two men were waiting for him. The courier opened the gate and followed her directions to a storage unit where he found two men waiting for him, one of whom identified himself as a representative of United Shoe Distributors. This individual then directed the courier to move the trailer next to the door of one of the storage units which was open and he tendered a cashier's check payable to Caporicci for $136,337.07, which was the correct COD amount. The two men then assisted the courier in unloading the boxes and placing them into the open storage unit. The plaintiff contends that in the presence of the driver the two men loaded the boxes into a waiting U–Haul truck, although the courier denies seeing a U–Haul truck. The driver attempted to obtain the signature of one of the two men but was unable to find either one of them after they received the boxes. RPS subsequently returned the check to the plaintiff who, after depositing it, discovered that the check was drawn on a bank that does not exist. The plaintiff brings this action alleging negligence, breach of contract, and conversion.

Under Fed.R.Civ.P. 56, a court should grant summary judgment if there is no genuine dispute of material facts and the moving party is entitled to judgment as a matter of law. The moving party must demonstrate that there is no issue of material fact. Once the moving party has sustained this burden, the opposing party must introduce specific evidence showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). This court finds that there are no material facts in dispute in this case. Even assuming that all facts propounded by plaintiff are true, the defendant is entitled to summary judgment as a matter of law. *Anderson v. Lobby Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ The liability of RPS and other federally certificated air carriers for loss attendant to goods in transit is governed exclusively by federal law. *Arkwright–Boston Mfrs. Mutual Ins. Co. v. Great Western Airlines, Inc.,* 767 F.2d 425, 427 (8th Cir.1985); *First Pennsylvania Bank, N.A. v. Eastern Airlines,* 731 F.2d 1113 (3d Cir.1984), *North American Phillips Corp. v. Emery Air Freight Corp.,* 579 F.2d 229, 233–34 (2d Cir. 1978). RPS's Pick–Up Record forms the basic contract between the shipper and the carrier. *Southern Pacific Transport. Co. v. Commercial Metals Co.,* 456 U.S. 336, 102 S.Ct. 1815, 72 L.Ed.2d 114 (1982). The Pick–Up Record stated that "in tendering these shipments for transport, shipper agrees to be bound by the terms and conditions of transport stated herein and by the governing rules and provisions set forth in RPSI Tariff 200...."

RPS's Tariff ICC RPSI 200–F, effective February 7, 1994, which was filed by RPS with the Interstate Commerce Commission governed the shipment in suit. Item 460 of this Tariff provides:

"All checks (including cashier's checks and certified checks) and money orders tendered in payment of COD packages will be accepted by the carrier *at shipper's risk* including, but not limited to, the risk of nonpayment and forgery, and carrier shall not be liable upon any such instrument.

Under the terms of the Pick–Up Record and the Tariff, plaintiff assumed all risk of fraud. RPS is not responsible for accepting the fraudulent check. The check appeared to be a valid cashier's check and it was for the correct amount. A cashier's check is "a check drawn by a bank on itself and accepted

upon issuance." *U.S. v. Arditti*, 955 F.2d 331, 337 (5th Cir.1992). The cashier's check at issue purported to be drawn by a bank on itself and appears to contain the signature of an authorized bank representative. RPS discharged its contractual obligation by collecting, and then delivering, these apparently valid cashier's checks to the plaintiff.

The plaintiff argues, however, that RPS breached its contractual duties and was negligent by misdelivering the goods. The plaintiff maintains that an experienced driver should have been on notice that the goods were not being delivered to the appropriate person when he was instructed to leave the packages in the storage bay and when he saw the goods then being loaded onto a U–Haul truck. The Court finds that RPS was not negligent, nor did it breach its contractual obligation to deliver the goods. RPS delivered the goods to the appropriate address, which was provided by the plaintiff and was listed on the Pick–Up Record. RPS indeed confirmed the address and time prior to delivery by calling the telephone number provided by the plaintiffs for International Shoe. Upon arrival at the appropriate address, the courier inquired in the office where he should go, and was directed by the manager of the self-storage unit to the appropriate storage bay. He then proceeded to that bay where he was met by an individual identifying himself as a representative of International Shoe and possessing a facially valid cashier's check in the appropriate amount. The driver discharged his contractual obligation to deliver the goods and was not negligent in so doing. Common carrier liability ceases upon delivery of the goods to the consignee. *Republic Carloading & Distributing Co. v. Missouri Pacific R. Co.*, 302 F.2d 381, 386 (8th Cir. 1962).

Also before the Court is the defendant's motion to amend its answer in order to assert a counterclaim for breach of contract against Caporicci for monies due and owing for delivery. The Court finds that this motion to amend filed after the pretrial conference and after a date had been scheduled for trial comes too late and should be denied.

Accordingly, finding that there is no dispute as to any material fact, the defendant's

motion for summary judgment is granted and the defendant's motion for leave to amend its answer is denied.